(16 App. Div. 412.)

WILMURT v. McGRANE.

(Supreme Court, Appellate Division, First Department. April 23, 1897.)

1. COVENANT RUNNING WITH LAND—INTEREST OF COVENANTEE.
    An agreement between the owner of a tenement house and the board of health that no building on other lots owned by him should be erected within two feet of the tenement house, is not a covenant running with the land, because the board of health has no interest in the premises.

2. SAME—AGREEMENT THAT COVENANT SHALL RUN WITH THE LAND.
    An express agreement that a contract relating to land shall be construed as a covenant running with the land does not make it such where the covenantee had no interest in the land.

3. EASEMENTS—IMPLIED RESERVATION.
    The conveyance of a tenement house does not imply an easement in favor of the grantee that no building should be erected on other lots owned by the grantor so as to close up the windows of the tenement house.

Appeal from special term, New York county.

Action by Francis M. Wilmurt against Bartholomew McGrane for specific performance. There was a judgment in favor of plaintiff, and defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, PATTERSON, and PARKER, JJ.

William L. Snyder, for appellant.

Austin E. Pressinger, for respondent.

RUMSEY, J. This is an action for the specific performance of a contract by which, in consideration that the defendant would convey to the plaintiff certain premises in the city of Mt. Vernon, Westchester county, and pay a certain sum of money to him, the plaintiff agreed to sell and convey to the defendant a lot of land on the southwesterly corner of 8th avenue and 148th street, in the city of New York. At the time fixed for closing the contract, each party made objections to the title. The plaintiff tendered performance on his part, which the defendant refused; and thereupon the plaintiff brought this action for the specific performance of the contract, or for damages if that could not be had. The defendant set up as a counterclaim that the title to the 8th avenue premises offered him by the plaintiff was defective, and that the plaintiff could not convey a good title to those premises, and asked judgment against the plaintiff for money paid by the defendant, and for certain expenses the defendant had been put to in the examination of the title. Issue was joined by reply. Upon these pleadings the case came to trial, with the result that the counterclaim of the defendant was dismissed, and the plaintiff had judgment for the amount of the expenses incurred in his attempt to perform the contract, and for his costs. From that judgment, the defendant takes this appeal.

The first question presented is whether the title offered by the plaintiff to the defendant was good. Two objections were taken to that title, which will be considered in their order. The first one arises from this state of facts, which was not disputed: The premises the plaintiff agreed to convey to the defendant were situated on

the southwest corner of 148th street and 8th avenue.    They consisted of a lot of land 25 feet on 8th avenue and 75 feet on 148th street.    In 1887, this lot, with considerable other property in the same vicinity, including, among other lots, one on 148th street, and immediately in the rear of the corner lot above mentioned, belonged to one Harry Graham.    The lot on 148th street in the rear of the premises of the plaintiff was 25 feet in front, and extended back some 65 feet southerly, and the corner lot abutted upon it for its whole width.    Graham had erected upon the 148th street lot a house which he proposed to use for a tenement house.    He had built the house up to the line of his lot, but section 661 of the consolidation act required that a space should be left between the east wall of the house and the rear wall of the house on the corner lot.    At that time Graham was the owner, not only of the tenement house lot, but of the corner lot afterwards conveyed to the plaintiff.    Graham, on the 15th day of December, 1888, made a contract with the board of health by which, in consideration that the board of health permit the windows to remain on the easterly side of Graham's house overlooking the corner lot as the windows were then constructed, Graham agreed that he would not erect or suffer to be erected "upon the strip of land at the rear of said six lots of land above described, which abuts upon said easterly walls of said building, fronting on said streets, said strips of land being in length 75 feet, measuring from each of said streets, by two feet in width, without the consent of the party of the second part or his successors."    One of the six lots of land upon which nothing was to be erected for a space of two feet in width at the rear was the corner lot, which was the subject of the contract between the plaintiff and the defendant.    The defendant insists that this contract was an incumbrance upon the land, which forbade the owner of that land to erect any building or anything else upon a strip two feet wide at the rear end of it; and because of that incumbrance the plaintiff could not give him a good title to the whole property as he had agreed.

The meaning of this contract is somewhat doubtful.    Just what it is that is not to be erected upon the land is not made to appear, but it is fair to assume for the purposes of this case that the contract forbade the erection of any building upon a strip two feet wide, running across the rear end of the corner lot.    Of course, if, by the operation of that contract, no subsequent owner of the land could build upon that two feet, it was a considerable incumbrance upon the land, and might cause a great diminution in its value.    But we do not think that this contract between the board of health and Graham was any incumbrance upon the corner lot after it had passed out of the ownership of Graham.    The law did not permit Graham to occupy his house on 148th street for a tenement house, unless there was a space between it and the adjoining house, and it was the duty of the board of health to see that that law was obeyed.    But the law did not forbid Graham from discontinuing the use of the building on 148th street for a tenement house at any time, and, if the space ceased to exist as the law required, the result would be simply that the board of health would compel him to discontinue the use of the building for that purpose.    The building itself did not become an unlawful erec-

45 N.Y.S.—3

tion, but it might be used for any other purpose not forbidden by the law.    It is quite doubtful whether any power was given to the board of health to make the contract with Graham which would forbid his building upon this strip of land.    Admitting, however, for the sake of the argument, that such contract was valid, the result of it was to create, while it existed, an easement in favor of the tenement house property against the land immediately east of it, including the corner lot. So far as this easement was created solely by this contract, it was the result of an agreement between the owner of all the property, on the one hand, and the board of health, which had no title or interest in any of the property affected by the agreement.    The agreement, therefore, between Graham and the board of health, was not, in its legal effect, a covenant running with the land, and no right of action lay upon that covenant against any person who should become a grantee of the corner lot, unless there was a reservation in his deed of the easement in favor of the tenement house over his land.

It is a well-settled principle of law that no covenant in regard to real estate will run with the land unless the obligee in the covenant has some interest in the land to which the covenant can be attached, and with the conveyance of which it will pass.    Unless such obligee has an interest in the premises which he can convey, the mere making of the covenant, which, so far as he is concerned, is entirely collateral to the ownership of the premises, will create no right in him as against a grantee of the premises over which the easement is created by the covenant.    Harsha v. Reid, 45 N. Y. 415; Spencer's Case, Smith, Lead. Cas. Eq. (7th Am. Ed.) 137, 192, 195, 198–200; 2 Washb. Real Prop. (4th Ed.) 284.    It is said by Judge Allen, in the case of Trustees, etc., v. Lynch, 70 N. Y. 440, 448, that a negative easement, by which the owner of the lands is restricted in their use, can only be created by covenants in favor of other lands, not owned by the grantor and covenantor.    Within this rule, it is quite clear that the contract between the board of health and Graham did not of itself operate to restrict the rights of a subsequent grantee of a corner lot, whose deed contained no reservation of an easement.

.But it is said that, by express contract between the parties, the agreement was to be construed as a covenant running with the land. That, however, is a matter of no importance.    The covenant runs with the land as the necessary result of the relation of the parties who make the covenant at the time it is made, and because the parties making the covenant have interests in the lands which are the subject of it.    The contracting parties may, by the express terms of their contract, provide that the covenant shall not run with the land, although, if nothing was said about it, it would so run; but, however clearly and strongly expressed may be the intent and agreement of the parties that the covenant shall run with the land, yet, if it be of such a character that the law does not permit it to be attached, it cannot be attached by agreement of the parties, and the assignee will take the estate clear of any such covenant.    Masury v. Southworth, 9 Ohio St. 340, 348.    So far as the two pieces of land were concerned, this covenant had no effect whatever, except that it was the expression upon paper of what may have been at that time the intention of

Graham, the owner of both pieces,—to create an easement in favor of his tenement house property over the lots fronting upon 8th avenue, one of which was the corner lot subsequently owned by the plaintiff. While he was the owner of both pieces of land, he undoubtedly had a right to create such an easement over one in favor of the other; and, if he had conveyed the tenement house property to be used for that purpose, it may be that, under the rule laid down in the case of Lampman v. Milks, 21 N. Y. 505, and other cases of that kind, an ease- ment would have been implied in favor of the property he sold, and against the property the title to which he retained. But as he sold the property which would have been the servient tenement, without making any reservation of an easement in favor of the property he retained, there was no implied reservation of an easement in favor of his own property against the property which he conveyed.

It was for a long time in dispute both in this country and in Eng- land whether, if a man owned two pieces of property, one of which was subject to a continuous and apparent easement in favor of the other, and he sold the servient piece, reserving the dominant piece, without any reservation of the easement in his conveyance, an ease- ment would be implied in favor of the property he retained against the property he sold. In the case of Lampman v. Milks, supra, Judge Selden, delivering the opinion of the court, seems to admit that such an easement would be implied; but that case did not involve any such question, and what was said upon that subject was purely a dictum, although it was directly in point in respect of the question actually discussed, which was whether, if the dominant tenement was sold by the owner of both, there would be an implied grant against him of an apparent and continuous easement over the servient tene- ment. The conclusions of Lampman v. Milks in that regard have not been followed in this state. It is deemed now to be well settled that, where the owner of two parcels of land conveys one by an ab- solute and unqualified deed, an easement will be implied in favor of the land retained by the grantor against the land conveyed only where it is apparent, continuous, and absolutely necessary for the enjoyment of the former. The rule is laid down in the following cases, and there is no need of any further discussion of the subject here: Outer- bridge v. Phelps, 45 N. Y. Super. Ct. 555, 13 Abb. N. C. 117; Shoe- maker v. Shoemaker, 11 Abb. N. C. 80; Scrymser v. Phelps, 33 Hun, 474; Wells v. Garbutt, 132 N. Y. 430, 30 N. E. 978; Paine v. Chand- ler, 134 N. Y. 305, 32 N. E. 18; Keats v. Hugo, 115 Mass. 204. Mr. Gale, in his work on Easements, says that although his original opin- ion was that, in cases like that above, an easement was implied in fa- vor of the land retained by the grantor, yet that the weight of au- thority is now the other way, and that there is no such easement unless it is expressly reserved by the deed. Gale, Easem. 123, 132, et seq. It is apparent in this case that the right to light through the windows in the tenement house is not absolutely necessary for the enjoyment of these premises. It may be convenient in order that the premises may be used for tenement house purposes; but there is no pretense that the premises are not useful or valuable for any other purposes, and therefore there is no necessity for reservation of the

easement which would entitle the grantor to insist upon it, within the rule laid in the cases above. Besides that, it is settled in this state that no easement for light or air will ever be implied in favor of one city lot over another, and that the doctrine of implied easements of that kind does not exist in this state. Myers v. Gemmel, 10 Barb. 537.

The defendant further objected that the plaintiff did not comply with his contract, because, by the terms of the contract, the mortgage on the lot he was to convey was to have been $15,000 only, whereas, in fact, the original amount of the mortgage was $17,000. It appeared, however, that the plaintiff produced, upon the closing of the contract, a certificate of the owner of the mortgage that the mortgage, which was originally $17,000, had been reduced $2,000 by payments. There was no question that the person who made this certificate was actually the owner of the mortgage at the time, and that the certificate was true in all respects. There was therefore no valid objection to be made to the property on account of the amount due on the mortgage.

But the defendant says that, even conceding that he was wrong in his claim that this contract with the board of health was an incumbrance upon the property, still that the question was a doubtful one, and, within well-settled rules of law, he would not be required to take a doubtful title. The rule which he lays down is well established, and while the question of doubt in regard to any title usually arises only where the facts are doubtful, and all persons interested in the title are not made parties to the action, so that they can be estopped by the adjudication, yet there is no question but there are some cases in this state which hold that a title may be doubtful because of the existence of a close question of law with regard to it, where all the persons interested in raising the question are not made parties to the action. Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Abbott v. James, 111 N. Y. 673, 19 N. E. 434. It is rather difficult to see how a question of law which has been decided upon careful examination, and under such circumstances as to make it practically a rule of property, can ever be said to be a doubtful question. At least, a conclusion formed under those circumstances is an authoritative statement of the law. But yet it must be conceded that where the facts are doubtful, and such a conclusion may be questioned by persons who are not parties to the action, the court will not compel a person to take a title which he may not be able to enforce. But we do not think this is one of those cases. There is no dispute about the facts of this case, and the rule of law which is applied to it is, and has been for years, thoroughly well settled; and the mere fact that somebody chooses to raise a question as to the existence of a well-settled rule of law is not, we think, sufficient to make a title, otherwise good, doubtful, so that a purchaser will not be made to take it.

The defendant claims that, upon the papers shown, his title to the Mt. Vernon property was a good one. It was made to appear that there was outstanding and upon file in the county clerk's office a complaint at the suit of one Charles Kervan against the defendant, to compel the specific performance of a contract which it was alleged

that the defendant had made with Kervan to sell him the identical property he subsequently agreed to sell to the plaintiff. With this complaint there had been filed the notice of pendency of action, and the action, so far as appears, was pending at the time fixed for closing the contract. When this state of facts appeared, it was sufficient, we think, to authorize the plaintiff to reject the contract, unless the defendant showed that there was no foundation in fact for the apparent incumbrance which came to exist by the filing of this lis pendens. All that appeared to the plaintiff was that a person claiming a right had taken steps to establish that right, and had filed such papers as would make the title of every subsequent grantee of the premises subject to his right. So long as that existed, it was quite clear that it was the duty of the defendant, who was in possession of all the facts, and who, if anybody, was able to explain this lien, and show that the apparent lien was no lien, to do so; and, in the absence of proof which ought to have satisfied the plaintiff that Kervan had no right in fact to the performance of his contract, we think that the plaintiff was justified in insisting upon the incumbrance, and in refusing to perform the contract until that incumbrance was removed. The objections to the contract between Kervan and the defendant do not seem to be of sufficient importance to show that the contract was not a valid one.

For these reasons, we think that the judgment of the court below was correct, and should be affirmed, with costs to the respondent. All concur.

