[L. A. No. 322.  Department One.—April 1, 1898.]

EMILY KENNEDY, Appellant, v. SILAS A. BURNAP et al.,
Respondents.

EASEMENT—LIGHT AND AIR—USER—IMPLIED GRANT—INJUNCTION.—An ease-
ment for light and air can only be acquired in this state by express
grant, and cannot be acquired by user, nor by implied grant from the
mere conveyance of a house with windows overlooking another lot
of the grantor; and an injunction will not lie to prevent a vendee of
such other lot from erecting a building on his lot so as to close up
and darken such windows, and shut off the light and air therefrom.

ID.—APPURTENANCE TO LAND—USER BY GRANTOR—PRESUMPTION AGAINST
PERMANENCE.—Although, under sections 662, 801, 1084, and 1104 of the
Civil Code, easements for light and air may exist, and become ap-
purtenant to land, and be transferred therewith, and the transfer of
real property passes all easements attached thereto, and creates in
favor thereof an easement to use other real property of the grantor
in the manner and to the extent that such property was obviously
and permanently used by the person whose estate is transferred, yet
it remains to be determined whether an easement for light and air
exists in any particular case, and the code does not have the effect
to create such an easement by severance or implication from the
mere grant of a house with windows overlooking another lot of the
grantor, and the mere use of such windows by the grantor cannot be
presumed to have been intended by him to be permanent, or to be
granted with the land as an appurtenance thereto.

ID.—COMMON-LAW RULE INAPPLICABLE. — Section 5 of the Civil Code, pro-
viding that where our code provisions are substantially the same as
the common law, they are to be construed as continuations thereof,
and not as new enactments, does not have the effect impliedly to es-
tablish such provisions of the common law as are not in conformity
with our institutions or applicable to the habits and conditions of soci-
ety in this country, and there being no express provision of the code
making easements for light and air such as they were regarded in
England, our courts are left free to say that no such easement will
be held to pass by implication under our law.

ID.—INJUNCTION TO RESTRAIN ERECTION OF BUILDING—PARTIES.—In an action
to enjoin the erection of a building, the architect, who is an employee
or agent of the owner of the building, is not a necessary party de-
fendant, but may properly be joined as a party codefendant with the
owner; yet, where it appears that the action cannot be maintained
against any defendant, a judgment in favor of the owner of the
building against the plaintiff will not be reversed upon plaintiff's
appeal for a harmless ruling sustaining a demurrer for misjoinder
of parties defendant.

APPEAL from a judgment of the Superior Court of San Diego
County.  W. L. Pierce, Ju e.

The facts are stated in the opinion.

A. C. Mouser, and Haines & Ward, for Appellant.

N. H. Conklin, for Respondents.

CHIPMAN, C.—Action for an injunction.  The defendant Burnap had judgment, from which plaintiff appeals on the judgment-roll, including bill of exceptions presenting motion to strike out certain allegations in the amended complaint, and the ruling of the court thereon.

But two questions are involved: "1. That the court erred in sustaining the demurrer made on the ground of misjoinder of parties defendant; and 2. That the court erred in sustaining the demurrer as to that portion of the amended complaint relating to light and air; and for like reasons the court erred in striking from the amended complaint  all matters relating to light and air."

The motion to strike out having been granted, the result was to leave the complaint shorn of facts sufficient to constitute a cause of action.

It appeared from the complaint that in 1887 one Hanbury owned certain lots and parts of lots, in the city of San Diego, fronting one hundred and forty-five feet on Third street and one hundred feet on D street.  He built a lodging house on the north fifty feet of the tract in 1881, fronting on Third street and running back ninety feet.  The lower story was finished for stores, and above this story and in each of the three upper stories windows opened out upon the vacant lots, admitting light and air to the south part of the building, which were alleged to be necessary for the use of and to render habitable this part of the house; Hanbury used the house in this condition until May 2, 1890, when he sold it and the land on which it rested to plaintiff's testator; Hanbury retained ownership of the remaining lots until September 13, 1892, when he sold them to the Savings Bank of San Diego County, and on January 20, 1896, the bank sold the lots to defendant Burnap; on May 9, 1896, Burnap began the erection of a three-story building on his lots and close to and against plaintiff's building, so as to entirely close up and darken the said windows in her building and shut off all light and air; these windows had been used as formerly and up to

the time of defendant's purchase. It was alleged that the proposed building would destroy one-third the value of plaintiff's property and render the south part of the house uninhabitable and unfit for use and cause irreparable damage.

1. The principal contention of appellant is, that the court erred in sustaining the demurrer and granting the motion because from the facts pleaded it clearly appeared that there were appurtenant to the premises, as a dominant estate, easements of light and air through the door and windows in the south wall, over the land adjoining it on the south, as the servient estate.

It is claimed that under the provisions of sections 662, 801, 1084, 1104, and 1107 of the Civil Code, and the decisions of this court, the complaint showed the existence of such easements of light and air with which defendants threatened to interfere. The conveyance from Hanbury to Kennedy was a grant deed.

Appellant disclaims any right by prescription or by user and so denies the authority of *Western etc. Co. v. Knickerbocker*, 103 Cal. 111, where it was said: "The doctrine that a proprietor of land may by user acquire an easement over adjoining land for the passage of light and air does not prevail in this country." The claim broadly made is that the easement of light and air passes by implied grant under our statute. It would seem to us that the reasons for supporting a right by prescription are even stronger than can be advanced in support of an implied grant. The questions are closely allied, and are often found discussed together and as depending on like reasons. But three states of the American Union retain the common law upon this subject, to wit, Illinois, New Jersey, and Louisiana. The first American case (*Story v. Odin* (1815), 12 Mass. 157, 7 Am. Dec. 46), which has been so often referred to as authority for the prescriptive right, was long ago overruled in that state. As recently as 1874, in *Keats v. Hugo*, 115 Mass. 204, 15 Am. Rep. 80, the cases were re-examined and the doctrine very ably considered by Gray, C. J., and he there shows that even in *Story v. Odin, supra*, the right by prescription was not necessarily involved. This case, in 115 Massachusetts, is valuable, however, for its discussion of the precise question now before us. It was there said: "The reasons, upon which it has been held that no grant of a right to air and light can be implied from any length of continuous enjoyment, are equally strong against implying a grant of such

a right from the mere conveyance of a house with windows over-
looking the land of the grantor. To imply the grant of such a
right in either case, without express words, would greatly em-
barrass the improvement of estates, and, by reason of the very
indefinite character of the right asserted, promote litigation. The
simplest rule and that best suited to a country like ours, in which
changes are taking place in the ownership and the use of lands,
is that no right of this character can be acquired without ex-
press grant of an interest in, or covenant relating to, the lands
over which the right is claimed."

The leading case in New York state is *Parker v. Foote,* 19
Wend. 309. Bronson, J., in the opinion of the court, said: "There
is, I think, no principle upon which the modern English doctrine
on the subject of lights can be supported. It is an anomaly in
the law. It may do well enough in England. But it cannot
be applied in the growing cities and villages of this country with-
out working the most mischievous consequences."

In *Morrison v. Marquardt,* 24 Iowa, 35, 92 Am. Dec. 444, Dillon,
J., presents the subject in a still different light, reaching the
same result. He said: "Surely an easement uncertain in its extent
and duration, without any written record evidence of its exist-
ence, fettering estates, and laying an embargo upon the hand of
improvement which carries the trowel and the plane, and, as
applied to a subsequent purchaser, against the spirit of our re-
cording acts, and not demanded by any consideration of public
policy—surely such an easement should not be held to exist by
mere implication." The question will be found more or less fully
treated in *Keiper v. Klein,* 51 Ind. 316. (Also in *Mullen v.
Stricker,* 19 Ohio St. 138; 2 Am. Rep. 379; *Rennyson's Appeal,*
94 Pa. St. 147; 39 Am. Rep. 777.)

We have no hesitation in adopting the prevailing rule in this
country, and are content with the reasons upon which it rests.
Nor do we think there is anything in our statutes restraining
us from so holding.

Appellant insists that our code provisions as to easements are
"substantially the same as the common law," and therefore "must
be construed as continuations thereof." (Civ. Code, sec. 5.)
Counsel presents with much force and ability the proposition that
section 1104 of the Civil Code has converted what at common
law were implied easements of light and air by severance of es-

tate, into statutory easements by such severance; and he urges that the rejection of this easement created by prescription does not necessarily justify the judicial repeal of the statutory easement created by severance.

. The provisions of section 1104, so much relied upon by appellant as creating by severance the very easement in question, we do not think have the effect claimed. The easement created is in favor of the land transferred, and is the right to use other real property of the transferrer "in the same manner and to the same extent as such property was obviously and permanently used by the person whose estate is transferred." If the easement claimed was the right to use a ditch or pipe through which water was conveyed to the property sold, and on which it was used as beneficial and necessary, there would be no difficulty in holding that the property retained by the transferrer was "obviously and permanently used by him . . . . at the time when the transfer was completed." There would exist such relationship of the two properties—the part sold and the part retained—as to justify what was said in *Cave v. Crafts,* 53 Cal. 135, that: "When the owner of lands divides his property into two parts, granting away one of them, he is taken by implication to include in his grant all such easements in the remaining part as are necessary for the reasonable enjoyment of the part which he grants, in the form which it assumes at the time he transfers it." Where a town or city lot has a frontage on a street and on an alley in the rear by means of which light and air may be obtained, and a building is erected thereon, we cannot say, as matter of law, that windows on the side overlooking another lot are necessary to the beneficial use or reasonable enjoyment of the building; nor can we say that, if the owner of two lots so constructs his house on one of them as to obtain light and air in part through windows overlooking the vacant lot, he thereby makes such "obvious" and "permanent" use of these openings and of the lot as to be held by implication to transfer an easement over the vacant lot when he sells the lot built upon. Indeed, it cannot be said there was any use made of the vacant land as in the case of a way or a pipe as a conduit for water to the granted premises; nor would it be reasonable to presume that by the mere use of openings to admit light and air the transferrer of the property intended that

the use of these openings made by him was to be permanent, and to imply a grant to the use of his land retained by him for such permanent use. The statute was not, in our opinion, intended to create any such right by severance of the estate.

That light and air may be the subject of an easement cannot be doubted; the statute says so plainly (Civ. Code, sec. 801); that light and air may also become appurtenant to land is equally clear (Civ. Code, sec. 662, 801); and we must concede that the transfer of a thing transfers all its incidents unless expressly excepted (Civ. Code, sec. 1084); and we must also concede, for the statute says so, that the transfer of real property passes all easements attached thereto and creates in favor thereof an easement to use the other real property of the grantor in the manner such property was obviously and permanently used by the person whose estate is transferred. (Civ. Code, sec. 1104.) All this is true, but it always remains to be determined in a given case whether an easement in fact exists, or may be presumed. Section 662, it is true, says that a thing is deemed appurtenant to land when it is by right used with the land for its benefit, but the "thing" referred to must have a legal, recognized existence. Not every "thing" is deemed to be appurtenant, even when by semblance of right used with the land for its benefit. The use of light and air through the windows overlooking defendant's lots was by right in the sense that it did not harm the owner or his property, but it would not follow necessarily that this air or light is to be deemed appurtenant to plaintiff's land, or that the enjoyment was by strict right.

Mr. Washburn says: "While many of the rules in reference to easements of ways apply to those of light and air, it must be obvious that in the acquisition of the right a different rule must prevail." (2 Washburn on Real Property, 5th ed., 361.) And it was held in *Mullen v. Stricker, supra:* "Where the owner of two adjacent lots conveys one of them, no grant or reservation of an easement for light and air will be implied merely from the nature or use of the structure upon the lots at or prior to the time of conveyance."

Nor do we think that section 5 of the Civil Code relied upon restrains us from following the generally accepted doctrine in this country. Where our code provisions are substantially the same as

the common law, they are to be construed as continuations thereof, and not as new enactments. (Civ. Code, sec. 5.)  It is a part of the common law itself, however, that the colonists took with them only such parts thereof as were adapted to their new conditions and surroundings. (1 Hammond's Blackstone, original p. 107, and notes of editor, 280. See cases cited in 2 Wait's Actions and Defenses, 282.)  The common law referred to in our statute is such only as conforms to our institutions and form of government and is applicable to the habits and conditions of society. (Id; Cooley's Constitutional Limitations 52.)  Before we should feel bound to hold that light and air are easements as they were regarded in England, to be governed in their acquisition, enjoyment, and disposition under common-law rules, we should require it clearly to appear that our statute is substantially the same in all these respects as the common law.  But the statute does no more than to declare that they may be the subject of an easement.  We think our court is left free to say that while an easement of light or air, such as is here claimed, may be created, that no such easement will be held to pass by implication.  Conceding, therefore, that plaintiff enjoyed what would be an easement at common law in England, and that by the transfer of title to the land there would have been an implied grant of this easement in that country, we are still of the opinion that no such easement was created under our law, nor did any such easement pass by implied grant.  When Hanbury sold, without any grant of the passage for air and light over his retained lots, the privilege ceased, and he could have immediately built upon the vacant lots as his successors in estate now propose to and may do.

2. Sanderson, one of the defendants, was the owner's architect, and it was alleged that he was personally supervising the work and gave the notices of intention to build.  He was but the servant and employee, as were the workmen on the building, and had no interest in the suit.  The general prayer of the bill would have reached him without being made a party.  We think, however, while not a necessary party defendant, it was competent for plaintiff to make him one, and his remedy to relieve himself was not by demurrer.  At the same time we do not see that the ruling of the court was such injury as to warrant us in remanding the case, especially as the action cannot be maintained against any defendant.

.The judgment and order should be affirmed.

Britt, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

Harrison, J., Garoutte, J., Van Fleet, J.