GIOVANNINA PICA, Also Known as JENNIE QUAREMBA, Respondent, v. CROSS COUNTY CONSTRUCTION CORPORATION and the CHASE NATIONAL BANK OF THE CITY OF NEW YORK, Individually and as Executor and Trustee under the Last Will and Testament of CHELLIS A. AUSTIN, Deceased, Appellants, Impleaded with MAYONE SUPPLY CO., INC., Defendant.

First Department, March 15, 1940.

*C. Elmer Spedick* of counsel [*Gerard A. Cartier* with him on the brief], for the appellant, The Chase National Bank of the City of New York, individually and as executor, etc.

*Arthur M. Laufer* of counsel [*Benjamin Sprung,* attorney], for the respondent.

UNTERMYER, J.   The issue presented is whether the plaintiff's grantors acquired, by implication of grant, upon the severance of lands held in common ownership, certain easements over the lands retained.

Annie Rehill, the common owner of an irregular plot of land at the northwest corner of One Hundred and Eighty-fourth street and Third avenue, erected thereon in 1897 three three-story buildings of similar character, known as Nos. 4555, 4557 and 4559 Third avenue.   Each building faced Third avenue and contained a ground floor store and one five-room apartment on each of the two upper floors.   The rear portion of No. 4559 extended beyond the rear of No. 4557 and the rear of No. 4557 extended beyond the rear of No. 4555.   The walls separating these buildings are common party walls.

The south wall of the building at No. 4559, as originally constructed, contained one vertical row of four windows and another vertical row of two windows.   This arrangement afforded the basement one window, the store one window and two windows to each of the apartments.   All six windows received light, air and prospect over the rear of premises Nos. 4555 and 4557 Third avenue.

In addition to the windows in the south wall of No. 4559, there were other windows in that building.   The store received light and air through a window constructed in the north wall, two large windows in the east wall and two windows in the west wall at the rear, and each apartment received light and air from three windows constructed in the east wall, one window in the north wall and two windows in the west wall at the rear.

In 1903 Annie Rehill constructed stores on the One Hundred and Eighty-fourth street side of the plot by erecting in the rear of the premises Nos. 4555 and 4557 a structure one story in height, extending to the south wall of No. 4559, leaving an air shaft through which the basement and store windows in the south wall received light and air. From 1903 until June, 1937, the physical condition and structure of these buildings remained substantially unchanged.

On November 7, 1921, the entire plot, with the buildings thereon, was conveyed by the executrix of Annie Rehill, deceased, to Assets Funding Corporation. On June 5, 1922, Assets Funding Corporation, the second common owner, made a mortgage for $12,000, covering the premises Nos. 4555 and 4557 Third avenue, not reserving any easements in favor of premises No. 4559 over Nos. 4555 and 4557. On June 26, 1922, Assets Funding Corporation made a conveyance of premises No. 4559, with no express grant therein of easements over Nos. 4557 and 4555, the premises retained. By mesne conveyances, the plaintiff on May 20, 1931, became the owner of No. 4559 together with all the rights, appurtenances and estate of her grantors. In the meantime, on April 30, 1923, Assets Funding Corporation conveyed Nos. 4555 and 4557, subject to the $12,000 mortgage. This mortgage was assigned on June 24, 1930, to the defendant bank which, on December 31, 1934, acquired title to the premises by foreclosure. On January 23, 1936, the bank conveyed the premises Nos. 4555 and 4557 to the defendant Cross County Construction Corporation and simultaneously received the latter's purchase-money mortgage for $12,000. This mortgage is still held by the bank together with a second mortgage for $4,000 covering the premises, executed on September 22, 1937. There is also a third mortgage for $2,500 on these premises which is held by the defendant Mayone Supply Co., Inc.

In June, 1937, Cross County Construction Corporation remodeled the buildings Nos. 4557 and 4555 and erected in the rear of No. 4557 and immediately contiguous to the plaintiff's premises, No. 4559, a three-story brick extension structure completely excluding the light and air from four of the windows in the south wall.

A single water pipe had been installed by Annie Rehill, the first common owner, in building No. 4557. It connected with the water main in Third avenue and thereby water was supplied to the three buildings. In November, 1937, after completion of the alterations, Cross County Construction Corporation disconnected the pipe and shut off the supply of city water to the plaintiff's premises No. 4559.

The plaintiff protested against the construction of the structure in the rear of No. 4557 but during the course of construction she failed to take steps to enjoin its erection. After completion and the shutting off of the water supply, the plaintiff brought this action for damages and a declaration that the premises Nos. 4557 and 4555, owned by the defendant Cross County Construction Corporation, and the mortgages thereon, are subject to easements of light and air and the right to use the water pipe as it theretofore existed, in favor of the premises No. 4559.

We are in accord with the judgment to the extent that it is decreed that the premises Nos. 4555 and 4557 are subject to an easement, in favor of No. 4559, to the free and uninterrupted flow of water through the water supply pipe connecting with the municipal main in Third avenue. It is contended that the owner of the premises Nos. 4555 and 4557 was an innocent purchaser without notice of the common water system, but the record contains sufficient evidence to support the court's conclusion to the contrary. The pipe leading from the city's main in Third avenue extended beneath the ceiling of the basement of No. 4557 and after piercing the common party wall separating Nos. 4557 and 4559, entered the plaintiff's premises at about the middle thereof. It had been in the same condition for many years, a condition which was open, visible and continuous at all times. Under the circumstances the water pipe entering the plaintiff's premises constituted a visible appurtenance thereto, and in this respect, at least, the premises Nos. 4557 and 4555 are the servient estate. (*Goldstein* v. *Hunter*, 257 N. Y. 401; *Paine* v. *Chandler*, 134 id. 385; *Lampman* v. *Milks*, 21 id. 505; *Stuyvesant* v. *Early*, 58 App. Div. 242.)

We are, however, not in accord with the conclusion of the Special Term that " the conveyance to the plaintiff's grantors by the Assets Funding Corporation, the second common owner, being first in time, makes said premises No. 4559 the dominant estate with easements open, visible and apparent, running with the land, and obtained by implication of grant," in so far as it applies to light, air and prospect over the southerly adjoining premises, or that the erection of the extension at the rear of No. 4557 violated any right of the plaintiff.

The plaintiff insists that an easement of light and air is created upon the severance of improved property where the part conveyed enjoyed, at the time of severance, advantages in these respects over the part retained. She accordingly contends that the common owner had so developed the rear portion of Nos. 4557 and 4555 as to burden the airshaft with a servitude for the benefit of the four windows in the south wall of No. 4559.

Although dicta may be found which would sustain that contention, we think it is opposed to the weight of authority and to the general policy of the law as it has developed in this State. According to leading commentators on the law of real estate, the principle which prevails not only in this State but elsewhere in the United States, is that in these circumstances easements of light and air are not to be implied for the reason that they unduly burden the land remaining in the common owner and interfere with its free alienation and adequate development. (3 Tiffany on Real Property [3d ed.], pp. 260, 261, § 783; Jones on Easements, p. 453, § 557; 3 Gerard, New York Real Property, pp. 2302, 2303; 1 Thompson on Real Property, p. 649, § 539; 2 id. p. 376, § 1275; 2 C. J. S. [Adjoining Landowners] p. 43, § 49.) The implication of such a grant is not even assisted by a clause in the deed granting all the rights, privileges and appurtenances pertaining to the premises conveyed. (*Parsons* v. *Johnson*, 68 N. Y. 62, 65; *Root* v. *Wadhams*, 107 id. 384, 394; *Randall* v. *Sanderson*, 111 Mass. 114; *Collier* v. *Pierce*, 7 Gray [Mass.], 18.) For analogous reasons the doctrine of " ancient lights " which prevails in England (*Leech* v. *Schweder*, L. R. 9 Ch. 463; *Pollard* v. *Gare*, [1901] 1 Ch. 834; *Broomfield* v. *Williams*, [1897] Id. 602; *Wilson* v. *Queen's Club*, [1891] 3 id. 522; *Myers* v. *Catterson*, 43 Ch. 470; *Birmingham, Dudley and District Banking Co.* v. *Ross*, 38 id. 295; *Allen* v. *Taylor*, 16 id. 355; *Wheeldon* v. *Burrows*, 12 id. 31; *Swansborough* v. *Coventry*, 9 Bing. 305), has been almost universally rejected here. (*Parker* v. *Foote*, 19 Wend. 309; *Kennedy* v. *Burnap*, 120 Cal. 488; 52 P. 843; *Baird* v. *Hanna*, 328 Ill. 436; 159 N. E. 793; *Anderson* v. *Bloomheart*, 101 Kan. 691; 168 P. 900; *Novello* v. *Caprigno*, 276 Mass. 193; 176 N. E. 809; *Hasselbring* v. *Koepke*, 263 Mich. 466; 248 N. W. 869; *Bailey & Son* v. *Gray*, 53 S. C. 503; 31 S. E. 354; *Roe* v. *Walsh*, 76 Wash. 148; 136 P. 1146; *White* v. *Bradley*, 66 Me. 254; *Lindsey & Brown* v. *First Nat. Bank*, 115 N. C. 553; 20 S. E. 621; *Goodwin* v. *Hammersley*, 69 Conn. 115; 36 A. 1065; *Giller* v. *West*, 162 Ind. 17; 69 N. E. 548; *Matter of Rennyson*, 94 Penn. St. 147; *Hubbard* v. *Town*, 33 Vt. 295; *Tunstall* v. *Christian*, 80 Va. 1; *Turner* v. *Thompson*, 58 Ga. 268; *Koplegard* v. *Hale*, 60 W. Va. 37; 53 S. E. 793; *Bordeaux* v. *Greene*, 22 Mont. 254; 56 P. 218; *Morrison* v. *Marquardt*, 24 Iowa, 35.) Although we recognize that that rule relates to rights which are prescriptive and is, therefore, not decisive of the question under consideration here, we refer to it as illustrative of the unwillingness of our courts to burden real estate with restrictions which would frustrate its full development.

Any other rule, logically applied, would inevitably lead to inconvenience and injustice. For, if an easement of light and air exists in favor of the windows of No. 4559 facing the airshaft, a similar restriction must also exist by implication against the erection of any higher structure on No. 4557, which would exclude light and air from the other windows of the southerly wall of the alleged dominant estate, unless there is reason to distinguish between a horizontal extension of the structure as it existed at the time of severance and an increase in altitude. The plaintiff is constrained to concede that if the premises retained had been vacant land at the time of severance no easement by implication would exist. We perceive no reason to discriminate between the right of the owner of vacant land fully to improve his premises even to the detriment of adjacent property and the right of the owner of partly improved land either to demolish the improvement and erect a larger structure or to extend existing structures both in area and altitude.

The rule we have expressed is sustained by the decisions in this State. The earliest case in which the subject is considered is *Parker* v. *Foote* (19 Wend. 309) which related to an easement claimed to exist by implication in favor of the plaintiff's property over other land, partly improved at the time of severance by the common owner. Rejecting the English doctrine of "ancient lights" it was held that no such easement was created with respect to light and air either by prescription or by implication of grant. Speaking of the windows of the alleged dominant estate the court said, " the light and air which they admit are not the subjects of property beyond the moment of actual occupancy." That decision was approved and followed in *Myers* v. *Gemmel* (10 Barb. 537.) There also, at the time of severance by the common owner, both lots were partly built upon, but it was nevertheless held that this did not prevent an extension of the building on premises owned by the defendant, although it darkened the windows of the plaintiff's house. These cases, we think, dispose of the distinction for which the plaintiff contends between implied easements relating to improved property and vacant land. The decision in *Myers* v. *Gemmel* (*supra*) was followed and applied in *Wilmurt* v. *McGrane* (16 App. Div. 412); *DeBaun* v. *Moore* (32 id. 397; affd., 167 N. Y. 598, on opinion below) and *Siegel* v. *John Street Corporation* (190 App. Div. 349). In our opinion it cannot be distinguished from the present case and expresses the rule of law as it exists today.

Again, in *Doyle* v. *Lord* (64 N. Y. 432) the court, although sustaining an implied easement of light and air under the special circumstances of that case, stated the general rule as follows (p. 439):

" This conclusion is reached without any departure from what may be called the American doctrine as to light and air, as distinguished from the English common law doctrine, and the law as laid down in the following authorities is fully recognized: *Parker* v. *Foote* (19 Wend. 315); *Palmer* v. *Wetmore* (2 Sandf. Sup. C. R. 316); *Myers* v. *Gemmel* (10 Barb. 537); *Mullen* v. *Stricker* (19 Ohio State, 135); *Haverstick* v. *Sipe* (33 Penn. State, 368); *Keats* v. *Hugo* (115 Mass. 204). Under these authorities, if the lessor had sold the store and lot upon which it stood, twenty-five feet by fifty-one, the grantee would have taken no right to light and air from the balance of the lot. In that case the grantor could have built upon the balance of the lot, and thus have darkened the windows in the store without violating any rights of the grantee."

There are, it is true, dicta in *Lampman* v. *Milks* (21 N. Y. 505) which seem to militate against these authorities. Certain of these, however, have been criticized in subsequent decisions (*Wilmurt* v. *McGrane, supra,* p. 418), and in *Wells* v. *Garbutt* (132 N. Y. 430) it was said that " the discussion outran the decision." The decision actually related to a flowing stream which the common owner had diverted into an artificial channel previous to the severance. Nor does *Havens* v. *Klein* (51 How. Pr. 82) sustain the plaintiff's claim in this respect for there the conditions plainly indicated the existence of an easement in favor of the property conveyed. The proof established that there was a fire escape at the rear of both buildings " for the mutual use of each house " so constructed that it extended over the defendant's yard. Furthermore, the shutters of the windows of the plaintiff's house " swung out over defendant's said yard." Under these circumstances it was reasonable for the purchaser to assume that an easement for these purposes was intended over the defendant's yard. The court recognized, however, that under ordinary circumstances no such easement would exist for it said (p. 85): " It is settled in this State that no right to the use of light and air in a building overlooking the land of another is acquired by use, enjoyment or pre-emption. It can pass only by express grant or covenant, and will not pass by implication of a grant (2 Washburn on Real Property, 319 [3d ed.], sec. 39), unless it is necessary to the enjoyment, and was clearly intended from the circumstances existing at the time when the conveyance was made."

We hold accordingly that no easement of light and air existed in the present case and this renders unnecessary a consideration of the question of priority between the conveyance of the alleged dominant estate on June 26, 1922, and the mortgage on the alleged servient estate executed and delivered on June 5, 1922.

A further question, though not suggested by the appellant, suggests itself to us: Should not the plaintiff have been relegated to an action at law for damages on account of any interference with the water supply instead of obtaining equitable relief which will impose an easement on the defendant's premises in this respect? The question has occurred to us because the cost of connecting the plaintiff's premises with the municipal water main in Third avenue is probably not large and the existence of an easement may seriously impair the value of the servient estate. It might properly have been contended that the balance of convenience and the disproportionate injury which may result would have justified the Special Term, had the issue been presented, in refusing equitable relief without prejudice to an action at law for damages. (*McCann* v. *Chasm Power Co.*, 211 N. Y. 301.) An examination of the record convinces us, however, that the defendants made no such contention at the trial, nor did they in their answers suggest that the plaintiff should be relegated to an action at law. Under these circumstances, we would not be justified in modifying the judgment to the extent that it applies to the water supply pipe, since for aught that appears the defendants may prefer to submit to the judgment in that respect rather than to the payment of the damages that may be recovered in an action at law.

The judgment should be modified by eliminating the provisions which grant relief against interference by the appellants with the plaintiff's alleged easement of light and air and as so modified affirmed, without costs.

MARTIN, P. J., O'MALLEY, TOWNLEY and GLENNON, JJ., concur.

Judgment unanimously modified by eliminating the provisions which grant relief against interference by the appellants with the plaintiff's alleged easement of light and air and as so modified affirmed, without costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.