ALBERT M. CRANCE et al., Appellants-Respondents, *v.* STATE OF NEW YORK, Respondent-Appellant.   (Claim No. 32176.)

Fourth Department, November 10, 1954.

*Burns F. Barford, Sr.,* for appellants-respondents.

*Nathaniel L. Goldstein, Attorney-General (Richard H. Shepp* and *Wendell P. Brown* of counsel), for respondent-appellant.

PIPER, J. These are cross appeals from a judgment of the Court of Claims which awarded claimants $10,000 and interest from August 15, 1951. Claimants appeal from the judgment as inadequate; the State appeals on the ground that the judgment and the decision directing same are contrary to the law and facts and that the award is excessive.

Claimants own property known as 525–527 South Main Street, Geneva, N. Y., bounded on the west by Main Street, on the east by Seneca Lake (according to their deed); their Main Street frontage being either 99 feet or 100 feet. Actually they have no Seneca Lake frontage as their predecessor in title in 1877 conveyed to the Geneva and Corning Railway Company a strip of land 66 feet in width '' partly above and partly below the waters of Seneca Lake '' and a railroad embankment and tracks were constructed thereon and are now a part of the Pennsylvania division of the New York Central Railroad. There was reserved to the grantor and his heirs and assigns '' all the rights and privileges which he now has as grantee or riparian owner upon the shore of said lake and the lands under the water thereof, except as occupied by said company ''.

Claimants purchased the premises in 1944 for the sum of $15,000. It is a three-story frame building, except there is a brick wall on the terrace level facing the lake. The terrace level, which is below the Main Street level, is used for doctors' offices. The rest of the house is used by claimants as a residence. Claimants made extensive repairs and improvements to the property. In 1944, and the early part of 1945, the offices were constructed and the kitchen moved at a cost of $8,000; the garage and driveway construction cost an additional $3,200. The walk and the steps leading from the street to the office entrance cost between $500 and $600. In 1950 a new heating system was installed at a cost of about $2,000. To the rear of claimant's house, the property slopes to the railroad right of way in a series of seven terraces.

The highway construction was commenced from the city line in 1948. The part which goes out in the lake was commenced in 1951. Hamilton Street (Routes 5 & 20) is to go under Main Street a few hundred feet south of claimants' property, then goes over the railroad tracks out in the lake and turns north-easterly and then northerly. When the highway embankment was first constructed there was about 500 feet of water between it and the railroad right of way. Later that was all filled in.

Thomas W. Coursey, the engineer having charge of this construction job testified: The elevation above sea level of Seneca

Lake in back of claimants' property is 445 feet. The new highway when completed will be 50 feet above lake level. The space between the railroad right of way and the new embankment was filled in 2 or 3 feet above normal lake level. The elevation at Main Street is 537 feet and at the foot of the railroad embankment 448 feet. Prior to the filling in by the State, the railroad tracks were 7 feet above lake level. The water came up part way on the railroad embankment; the slope was 2 feet vertical to 1 foot horizontal.

Margaret B. Kraus, claimants' expert, testified the value of claimants' property in August, 1951, with " the right of access to Seneca Lake in front of and abutting the premises * * * and access being over the tracks '' of the railroad, was $45,000; and that it was worth now, without access to the lake $25,000. She would express no opinion as to the value of the property if the railroad were not there.

L. S. Appleby, the State's expert, testified the fair value of claimants' property in August, 1951, assuming they had riparian rights, was $36,500 and that the value today without riparian rights is $34,500.

After the case was closed it was reopened by stipulation and order for the purpose of receiving in evidence additional exhibits. These include maps, plans and also two appraisals of the damage, one by L. H. Guard of Geneva for claimants and the other by Ralph Klonick of Rochester for the State. Guard says the property in August, 1951, was worth $49,000; that the value is now $28,000; the damage he says results from " the riparian rights being lost and the view from the terrace being impaired ''. Klonick in his report says the property is worth now as much as it was before the construction commenced.

This case is very unusual. The claimants here assert, and the State does not question, that claimants had riparian rights. However, these were not the usual riparian rights that an owner of lands enjoys when his lands border on the water. Claimants had the right to cross the railroad right of way to go to the water. The lands under water are owned by the State. (*Granger* v. *City of Canandaigua*, 257 N. Y. 126.)

While the common law of England was to the contrary, the case of *Town of Brookhaven* v. *Smith* (188 N. Y. 74, 87) makes it clear that, generally speaking, a riparian owner, owning property adjacent to navigable waters has the right of access to the water and this includes the right to construct a pier or dock; this right, however, is " subordinate to the exercise of the power

of the legislature  \*  \*  \*  for the improvement of navigation, or for the regulation of commerce."

One of the claimed elements of damage here is the loss of a site for a boathouse. Such a structure would have to have been constructed entirely on lands owned by the State, as the claimants' land is entirely cut off from the lake by the railroad lands. We doubt he had any such right under his reserved " riparian rights ". If such a structure had been built under license from the State he would probably have been entitled to recover for its value. (*Matter of City of New York* [*Pier Old No. 49*], 227 N. Y. 119.)

There is no serious legal question as to the rule of damages. " For purposes of valuation an easement is to be considered as appurtenant to the dominant tenement. Together they constitute a single entity." (*Matter of City of New York* [*West 10th St.*], 267 N. Y. 212, 222.) Consequently the rule we must follow is the difference between the value of the premises before the construction and the value thereafter when the rights were extinguished by the construction. (*City of Syracuse* v. *Stacey,* 45 App. Div. 249.) The difficulty arises in determining the amount, and this depends upon what were included in claimants' riparian rights, having in mind that they did not own any land adjacent to the waters of Seneca Lake.

It appears from the decision of the Court of Claims that consideration was given to an impairment of view as an element of damages. We find no case that suggests that " scenery " is included in riparian rights. The testimony of Mrs. Kraus does not enlighten us as to whether or not she gave any weight to the " loss of view ". Guard's appraisal would indicate that he did give that element some weight in fixing damages. The State cites three cases, which it contends hold there is " no basis in law for payment to claimants for a loss of view ". None seem to be directly in point. (*Perlmutter* v. *Greene,* 259 N. Y. 327; *Pica* v. *Cross Country Constr. Corp.,* 259 App. Div. 128; *Buro* v. *State of New York,* 281 App. Div. 61.) The first case would seem to point towards such a holding and we find no case in which " view " has been considered as an element of damage in a claim for loss of riparian rights.

Claimants have lost the right of access to Seneca Lake including the right to build a pier adjacent to the railroad lands, providing it did not interfere with navigation. The State's witness Appleby fixes the fair value of claimants' land, before and after this loss at $36,500 and $34,500. We think this is a

fair valuation, having in mind the limited " riparian rights " which claimants have lost.

The judgment should be modified by reducing the award to $2,000 and interest, and, as modified, affirmed.

All concur, except McCURN, P. J., and VAN DUSER, J., who dissent and vote for affirmance. Present — McCURN, P. J., VAUGHAN, PIPER, WHEELER and VAN DUSER, JJ.

Judgment modified on the law and facts by reducing the award of $10,000 to $2,000 with interest, and, as modified, affirmed, without costs of these appeals to any party. Certain findings of fact disapproved and reversed and new findings made.