[No. 11110.  Department One.  October 25, 1913.]

## L. W. ROE et al., *Respondents*, v. CHARLES M. WALSH et al., *Appellants.*[1]

BOUNDARIES—AGREED LOCATION—POSSESSION AND IMPROVEMENTS—ESTOPPEL. Where the owner of two lots, by an erroneous survey, located the dividing line 21.6 inches from its true location, and with reference thereto built a flat on one of the lots, extending the eaves and a sidewalk to a side entrance over and upon the 21.6 inch strip of the other lot, and conveyed the lot and improvements believing and representing that the survey located the true dividing line, he and those claiming under him are estopped to assert title to the strip, in the possession of innocent purchasers.

EASEMENTS—APPURTENANCES—WAYS OF NECESSITY. The fact that the owner of two lots, before their sale to different parties, in constructing buildings thereon left an alleyway seven feet wide located entirely on one of the lots and between the improvements and side-walks leading to the rear, which alleyway provided the only means of access to the rear for teams and heavy vehicles, does not show an intent to create an easement for a passageway to the rear, passing as

[1]Reported in 135 Pac. 1031; 136 Pac. 1146.

an appurtenance on a sale of the lot adjoining, especially where there was another way left 42 inches wide on the lot sold, and the use of teams and heavy vehicles did not appear to be an absolute necessity to the lot sold.

SAME—AIR AND LIGHT. An implied easement for air and light is not shown by the fact that the owner of two lots left a space of several feet between buildings and erected a building with windows and an entrance facing the dividing line; especially where the house stood back from the line far enough to admit of entering from the side.

Appeal from a judgment of the superior court for King county, Dykeman, J., entered October 14, 1912, in favor of the plaintiff, upon sustaining a demurrer to defendants' cross-complaint, in an action of ejectment. Reversed.

*Totten & Rozema,* for appellants.

*Lewis & Levine,* for respondents.

MOUNT, J.—This action was brought to recover possession of the north four feet of lot 11, block 5, Nagle's addition to the city of Seattle. The defendants answered the complaint, admitting the legal title to be in the plaintiffs, and alleged, by way of cross-complaint, that they were the owners of a strip of land 21.6 inches wide on the north side of lot 11; that they were entitled to an easement upon a strip of land about 12 feet wide along the north side of lot 11; and, also, to an easement for light and air on account of a building erected upon the south half of lot 10. The plaintiffs thereupon filed a motion for judgment upon the pleadings. Upon the hearing thereof, it was stipulated that the motion should be considered as a demurrer to the cross-complaint. The lower court sustained the demurrer. The defendants elected to stand upon their cross-complaint, and a decree was entered in favor of the plaintiffs. This appeal is prosecuted from that decree.

The cross-complaint is quite lengthy. We deem it unnecessary to set it out verbatim, but will state the substance of the allegations. Lots 10, 11, and 12 are situated in the

southeast corner of block 5. These lots face to the east on
Twelfth avenue. The lots extend to the center of the block;
there is no alley in the block. For several years prior to July,
1902, one Winquist and wife were the owners in fee of the
south half of lot 10, which was near the middle of the row of
lots on the east side of the block; and also the owners of lots
11 and 12. Lot 12 is at the southeast corner of the block.
Sometime prior to July, in the year 1902, Winquist and wife
erected a three-story frame building on the south half of lot
10, together with a 42-inch walk along the south side of it.
This building was entirely upon the south half of lot 10, ex-
cept that the outermost eaves on its south side extended 21.6
inches over lot 11. The walk along the side of the house also
covered that much space on lot 11. Each of the stories of
this building is a so-called flat, having separate entrances.
The two upper flats have their main entrances at the front of
the building on Twelfth street. The lower flat has its en-
trance on the south side of the building, some thirty feet or
more back from Twelfth street, and is reached by way of the
walk.

Before constructing this building, Winquist and wife had
the premises surveyed by a surveyor. According to the sur-
vey, the south line of the walk and the outermost eaves of the
building did not extend over the south line of lot 10. As a
matter of fact, the line between lots 10 and 11, as established
by the surveyor, was 21.6 inches south of the true line. The
sidewalk and the eaves of the building therefore extend that
distance over the true line of lot 10 onto lot 11.

On the 3d day of July, 1902, Winquist and wife conveyed
the south half of lot 10, with its appurtenances, to one Alonzo
Lord. The interest so conveyed afterwards became vested
through mesne conveyances in the defendants. Mr. Lord and
his successors in interest have been in the continual possession
of said strip of land and the building; and it is now in the
possession of the defendant. At the time of the conveyance
by Winquist and wife to Mr. Lord, it is alleged, that,

"It was believed by them, and represented to the purchaser by them that the building on said south half of lot 10, and the walk on the south side thereof, did not extend beyond the south line of said lot 10, and the purchasers of said premises and the subsequent owners thereof, including the defendants, believed such to be the fact, and the defendants did not ascertain the true dividing line between said lots 10 and 11 until about the first day of June, 1911."

It is argued by the appellants that these facts show a right of possession in the appellants to this strip of ground 21.6 inches wide on lot 11, extending from Twelfth street back to the end of the building constructed, as hereinbefore stated, upon the south half of lot 10. As sustaining this position, we are cited to the rule in *Turner v. Creech*, 58 Wash. 439, 108 Pac. 1084; *Windsor v. Sarsfield*, 66 Wash. 576, 119 Pac. 1112; *Rowe v. James*, 71 Wash. 267, 128 Pac. 539; and *Campbell v. Seattle*, 59 Wash. 612, 110 Pac. 546.

In the *Turner* case, which was a case somewhat similar to this one upon the facts stated, we said: "The location of a line by a common grantor is binding upon the grantees;" citing a number of cases. On page 444, of that decision, we said:

"Practical or agreed location of a boundary line may result from long acquiescence in its location, or when drawn and acted upon by the parties, as where valuable improvements are placed with reference to it and before it is denied by either party. 5 Cyc. 930 *et seq.*"

In the *Windsor* case, where land was sold, and incorrect boundaries pointed out, where the vendee went into possession and erected near the line on the land in dispute valuable improvements, we held that the vendor was estopped to recover possession of the disputed tract; quoting from *Turner v. Creech, supra*, and *Flynn v. Glenny*, 51 Mich. 580, 17 N. W. 65. We think the rule in these two cases is conclusive of the question here, because it is alleged that Winquist and wife, who were common owners of the property at the time it was sold to the predecessors in interest of these appellants, be-

lieved and represented to the purchasers that the building and walk did not extend beyond the line of lot 10. The purchasers of the premises and the subsequent owners, including the defendant, did not ascertain the true dividing line until the 1st day of June, 1911, after the valuable improvements had been placed upon the property. It is plain, we think, if this allegation is true, that Winquist and wife could not now recover the possession of this strip of land 21.6 inches wide extending from the street to the rear of the building. These respondents are in no better position than the common grantors, Winquist and wife. While it is true that there is no allegation in the cross-complaint that any easement was conveyed upon any other lot than the south half of lot 10, described in the deed, yet Winquist and wife had erected the building upon the south half of lot 10 and had extended the roof thereof 21.6 inches over onto lot 11, and had represented to the purchasers of that building and lot that the building was wholly upon lot 10. They, therefore, cannot now be heard to say, nor can their grantees, who purchased with notice of the fact that the building is located where it is, be heard to say, that the building is not wholly upon lot 10. On this branch of the case, we think the lower court was in error in holding that the cross-complaint did not state a defense to the cause of action stated in the complaint.

The appellants also argue that the cross-complaint is sufficient to show an easement for a passageway wholly upon lot 11 and to the rear of lot 10; and also an easement for light and air for the building erected upon lot 10. The facts as alleged in the cross-complaint relating to this question are as follows: Prior to July 3, 1902, Winquist and wife were the owners of the south half of lot 10 and all of lots 11 and 12, lying south thereof, in block 5. The south half of lot 10, was, at that time and now is, 30 feet wide, and was at that time 128 feet long; that, about two years prior to July 3, 1902, Winquist and wife erected upon lot 11 a two-story frame building, the north wall of which was about 11 feet

and eight inches south of the boundary line between lots 10 and 11. Sometime after the erection of the building upon lot 11, Winquist and wife erected a three-story frame building on the south half of lot 10, the building hereinbefore referred to. Winquist constructed a sidewalk along the north side of the building first built, and another along the south side of the building last built. Between these walks was an alleyway 7 feet wide, suitable for, and providing the only means of access to the rear of said lots for teams and heavy vehicles; that this space was left open for that purpose by Winquist and wife, and was intended by them to be permanently maintained and kept open for the above mentioned purposes. Winquist and wife erected at the rear of the premises sheds suitable for storing fuel for the use of the occupants of the flats. The only means of access to the sheds was the alleyway between the two buildings. On July 3, 1912, Winquist and wife conveyed the south half of lot 10, together with its appurtenances, to one Alonzo Lord. The interest so conveyed afterwards through mesne conveyances, became vested in the appellants, who acquired title on April 25, 1911. On December 23, 1902, Winquist and wife conveyed lots 11 and 12 to Abrams and wife. Afterwards, Abrams and wife conveyed these lots to the respondents Roe. The cross-complaint alleges that the several owners of lot 10, up to about June 1, 1911, had the continual use of said alleyway for the purpose of reaching the rear of said premises by teams and wagons; that the alleyway was at all times open and visible and used as an alleyway and necessary for the reasonable enjoyment of the south half of lot 10 and the buildings thereon. The owners of lot 11, up to June 1, 1911, allowed, without objection, the continuous use of the alleyway. This alleyway, as appears from the cross-complaint, was located entirely upon lot 11; no part of it was upon lot 10. And there is no allegation that any easement therein was reserved in the deed to lot 10, nor that any improvements were placed upon the alleyway by the purchasers of lot 10; nor that there was an absolute

necessity for the alleyway for the use of lot 10. It was clearly, under the facts alleged, a permissive use, by which the owners of lot 10 were permitted to go upon and across lot 11, in order to reach the back part of the premises for the purpose of delivering wood and fuel. In speaking to the question here presented, we said in *Malsch v. Waggoner*, 62 Wash. 470, 114 Pac. 446, quoting from 14 Cyc. 1166:

" 'Upon the principle of construction that where a man grants a thing he grants with it everything necessary to its enjoyment, it is held that by a grant of land easements necessary for its enjoyment are created *ex necessitate* and pass by the grant, although not expressly named. The rule of the common law upon this subject is that where the owner of two heritages or of one heritage consisting of several parts has arranged and adapted these, so that one derives a benefit or advantage from the other of a continuous and obvious character, and he sells one of them without making mention of those incidental advantages or burdens of one in respect to the other, there is in the silence of the parties an implied understanding and agreement that these advantages and burdens respectively shall continue as before the separation of the title.'

"There was, however, no necessity for the implied easement for which appellants contend. The evidence disclosed that the way had never been used adversely, that the use had been permissive only, and that there is another possible and practicable way from the south lands to the county road entirely within tract C, which can be used without crossing tract B."

" 'A grant of a right of way cannot be inferred merely from the fact that there is a way leading to the premises purchased, even though the grant of land be with all privileges and appurtenances, for the use of the word 'appurtenances,' although appropriate to the conveyance of an existing easement, is not sufficient to create one where none exists. 14 Cyc. 1170.' "

" 'No implication of a grant of a right of way can arise from proof that the land granted cannot be conveniently occupied without it. Its foundation rests in necessity not in convenience. It follows that a party cannot have a way of

necessity through the land of another when the necessary way to the highway can be obtained through his own land, however convenient and useful another way might be. 14 Cyc. 1173.'"

So in this case, according to the allegations of the cross-complaint, the appellants have a way from Twelfth street to the rear of lot 10 about 42 inches wide. It is true that wagons and teams may not be driven down this way; but we think it is not an absolute necessity that this should be done. We are therefore satisfied that the cross-complaint is not sufficient to show an easement in the way over lot 11.

The same is also true as to the easement for light and air. The mere fact that the grantor built both of these buildings, one upon lot 10 near the line, and another upon lot 11, several feet distant therefrom, and that windows were upon the south side of the building upon lot 10, does not show that, when lot 10 was sold without reference to any easement upon lot 11, an easement for light and air was thereby granted. As was said in *Keats v. Hugo*, 115 Mass. 204, 15 Am. Rep. 80:

"The use and enjoyment of the adjoining lands are certainly no more subordinate to those of the house where both are owned by one man, than where the owners are different. The reasons, upon which it has been held that no grant of a right to air and light can be implied from any length of continuous enjoyment, are equally strong against implying a grant of such a right from the mere conveyance of a house with windows overlooking the land of the grantor. To imply the grant of such a right in either case, without express words, would greatly embarrass the improvement of estates, and, by reason of the very indefinite character of the right asserted, promote litigation. The simplest rule, and that best suited to a country like ours, in which changes are continually taking place in the ownership and the use of lands, is that no right of this character can be acquired without express grant of an interest in, or covenant relating to, the lands over which the right is claimed."

In *Stein v. Hauck*, 56 Ind. 65, 26 Am. Rep. 10, in speaking to this rule, the court said:

"We cannot see that this rule will work injury to any one; and we think it will place these impalpable and invisible claims upon a safe footing, consistent with the rights of all concerned. It is very easy to reserve such an easement to the vendor, or grant it to the vendee, in the deed which conveys the land, or to create it by any valid contract; then each one knows what he sells, and what he buys, and all persons are protected in their rights. Embarrassments have accumulated, and injuries have been suffered, to property, growing out of the unsettled views upon this question. It should be put to rest. No one should stand in danger of unwittingly suffering burdens to be laid upon his property, nor be constantly compelled to guard against such an insidious invasion of his rights."

It seems plain that when these respondents, who are the grantees of Winquist and wife, the same as are the appellants grantees of Winquist and wife, purchased lots 11 and 12, they had no notice that any easement for light and air would be claimed by the appellants by reason of the fact that the windows in the house near the line of lot 11 all faced towards the line. They had a right to assume, in making their purchase, that no easements were granted upon lot 11 which were not of record, except those which were manifest by a mere observance of the lands. An easement for light and air was certainly not so manifest, because the house itself stands back from the line and upon lot 10 more than twenty inches, so that the eaves only project over upon lot 11. We are satisfied, therefore, that the cross-complaint does not state a cause of action for an easement for light and air; nor for an easement for a so-called alleyway; but that it does state a cause of action for the 21.6 inches upon which improvements have been made by the common grantors.

The judgment of the trial court is therefore reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

CROW, C. J., GOSE, PARKER, and CHADWICK, JJ., concur.

ON PETITION FOR REHEARING.

[*En Banc.* December 13, 1913.]

PER CURIAM.—Both the appellants and the respondents have filed petitions for a rehearing of this case, upon the ground that the opinion is not clear whether the defendants under the answer, if proved, are entitled to the fee or an easement in the strip of land 21.6 inches wide, or whether the strip of land extends the length of the lot or merely the length of the building.

In order to make these questions clear, we now state that, if the allegations in the answer are proved to the effect that the vendors represented to the vendees that the building and walk were wholly upon lot 10, the vendors and their successors are bound by that representation to the extent thereof, and title vested according to the representation. If the representations were implied, the title to the strip vests in the vendee only in so far as it is covered by the improvements. If the appellants fail to prove that the representations were made as to the location of the building or the lot line, then the respondents are to recover to the true line.

There is no merit in the other questions presented in the petitions for rehearing and hearing *En Banc.*

The petitions are therefore denied.