[No. 32678.   Department Two.   June 1, 1954.]

FRED MARTIN et al., *Appellants*, v. FRANK HOBBS et al., *Respondents.*[1]

*Catlett, Hartman & Jarvis*, for appellants.

*Graham, Green, Howe & Dunn*, for respondents.

WEAVER, J.—The ownership of a narrow strip of land is disputed.  The lawsuit is described, in the brief of one of the parties to this action, as follows:

"This case involves one of the too frequent disputes between adjoining owners of real estate.  Whether the time, cost and effort is justified is only for the litigants to determine, but both will never be satisfied until it is finally determined and then one side only."

For the purpose of illustration, we will describe the disputed strip of land as a quadrilateral, approximately one

[1] Reported in 270 P. (2) 1067.

foot wide at the east end, one hundred seventy feet long, and two feet wide at the west end. The following is a more accurate description. The northeast corner is 0.833 feet north and 1.486 feet west of the southeast corner. The north boundary (to which we will refer as the "Rutherford line") is 174.635 feet long. Its bearing is either north 88° 53′ 43″ west, or north 89° 01′ 47″ west. The south boundary (the "Morford line") is 168.61 feet long and bears north 89° 17′ 12″ west. The northwest corner is approximately two feet north of the southwest corner. The west line of the quadrilateral is on the concrete bulkhead which runs approximately north and south, some distance east of the meander line, but is not the west line of the tracts.

Between 1926 and 1929, B. F. Pearce acquired title to lots 11, 12, and 13 of amended re-plat of a portion of Spring Hill Villa tracts, King county, Washington. Lot 11 is to the north. The lots are one hundred ten feet between their north and south boundaries. At various times, Mr. Pearce acquired the tidelands which border the lots on the west. Beach drive is the eastern boundary of the lots.

On September 24, 1941, Mr. Pearce conveyed the north one hundred five feet of tract 11 to C. E. Philp. At that time, a hedge, stairway, wooden fence, and a return wall running easterly from a bulkhead which extends north and south in the west end of the south one hundred five feet of lot 11, were in existence. An old, open-front, wooden garage was on lot 12 and the south portion of lot 11. Generally, the hedge, fence, and return wall were along the *north* line (Rutherford line) of the quadrilateral we have described.

October 13, 1942, Mr. Pearce conveyed the south five feet of tract 11, tract 12, and tract 13, except the south eighteen feet, to Mr. and Mrs. Martin, plaintiffs and appellants. Nine cottages facing Puget sound are on the property.

July 29, 1946, Mr. Philp and wife deeded the north one hundred five feet of tract 11 to Mr. and Mrs. Hobbs, defendants and respondents. Carl E. Morford, a licensed engineer and land surveyor, surveyed the property for the Hobbs and established the north and south boundaries of

their property. The south boundary, as established by him, is the *south* line (Morford line) of the quadrilateral we have described. Mr. Hobbs examined the results of the survey before completing the purchase.

This action arose when defendants Hobbs started to erect a fence along the western end of the Morford line, within a few inches of the northernmost cottage on plaintiffs' property. If extended eastward, it would have cut through a small portion of the northwest corner of the open-front, wooden garage (which the parties admit is over thirty years old) on the Martin property.

May 11, 1950, the Martins had their property surveyed by H. W. Rutherford, a licensed engineer and land surveyor. He established the dividing line between the properties as the *north* line of the quadrilateral we have described.

Only two minor man-made encroachments are on the disputed strip: (1) a bulkhead, on the west portion of plaintiffs' lots, which extends a few feet north of the Morford line where it joins the south end of defendants' bulkhead; and (2) a small portion of the northwest corner of the open-front, wooden garage which lies between the Rutherford and Morford lines.

We have but sketched the mass of facts appearing in two volumes of testimony and fifty-nine exhibits of maps, deeds, title policies, charts, and photographs. Our delineation of the facts, however, is sufficient to present the questions of law raised on this appeal.

Plaintiffs appeal from a decree (a) establishing the Morford line as the true boundary between the properties of the parties; (b) quieting defendants' title to the Morford line; and (c) ordering plaintiffs, within ninety days after defendants, or their successors in interest, give written notice, to remove that portion of the open-front, wooden garage which extends over the true legal boundary line. The decree does not mention the bulkhead encroachment. It is apparent that the encroaching bulkhead is necessary for the protection of both properties.

Twenty of appellants' twenty-four assignments of error are argued under the heading, "Where is the boundary line between the Hobbs and Martin properties?"

■ Appellants urge that the location of the boundary line by a common grantor is binding upon the grantees and their successors in interest. *Atwell v. Olson,* 30 Wn. (2d) 179, 190 P. (2d) 783 (1948); *Strom v. Arcorace,* 27 Wn. (2d) 478, 178 P. (2d) 959 (1947); *Windsor v. Bourcier,* 21 Wn. (2d) 313, 150 P. (2d) 717 (1944); *Roe v. Walsh,* 76 Wash. 148, 135 Pac. 1031, 136 Pac. 1146 (1913); *Turner v. Creech,* 58 Wash. 439, 443, 108 Pac. 1084 (1910). The line established upon the ground by the parties is presumably the line mentioned in the deed. As pointed out in Ellis, Boundary Disputes in Washington, 23 Wash. L. Rev. 125, 130, this rule has been followed uniformly through a series of strong decisions.

B. F. Pearce was the common grantor. Mr. Philp was the first grantee in 1941. Neither Mr. Pearce nor Mr. Philp was available to testify. Mrs. Philp (now Mrs. Rankin) testified that their purchase of the property had been handled exclusively by Mr. Philp. Thus, there is no testimony of the transaction to support the application of the common grantor rule.

The trial court said in its oral opinion:

"It is to be regretted that the Court has not had the benefit of the testimony of Philp, the intermediate owner between Pearce and Hobbs.

"This testimony itself conceivably could have been enough to turn the case one way or the other. As the evidence now stands, in the opinion of the Court, *it falls short of the establishing that Pearce made, or established the hedge, fence, return wall line as the boundary line between the two parties, or that Philp purchased in reliance, on or with reference to such line.*

"Indeed, the fair preponderance of the evidence makes it more reasonable to conclude that Philp purchased the north one hundred five feet of Tract 11, with reference to, and reliance upon, the paper title or the true legal boundary line as described in the deed. . . . A consideration of the location of the stairway, and the location of the northernmost cottage, gives some support to the theory that

whoever located that stairway, and whoever located the cottage, did so with reference to the true line on the ground." (Italics ours.)

We agree with the trial court that appellants failed to meet the burden of proof necessary to establish the laurel hedge, fence, and return wall from the bulkhead as the actual boundary fixed by the common grantor. Surmise and conjecture cannot substitute for evidence of the transaction.

This leaves the question: Since the Morford survey and the Rutherford survey do not coincide, which, in fact, establishes the true boundary line?

The surveys resulted in different locations of the boundary line between the properties, because the surveyors used different bearings to establish the direction or bearing of the boundary line. Mr. Morford testified that the bearing which he used to establish the south line of respondents' property was north 89° 17' 04" west. Mr. Rutherford testified that the bearing which he used was north 88° 53' 43" west.

The properties have been surveyed by other qualified and competent surveyors. After the dispute arose, respondents employed Mr. Myron B. Judd, a licensed land surveyor and civil engineer, to check the other surveys. Mr. Judd's survey, which the evidence shows was made with meticulous care and thoroughness in view of the pending litigation, was based upon: (1) the records of earlier surveys of other tracts in the same addition between 1906 and 1944; (2) the United States government survey notes; (3) records of surveys run by the city of Seattle engineering department; and (4) a tying in of the tacks and stakes placed by Messrs. Rutherford and Morford to certain United States Coast and Geodetic survey monuments.

Mr. Judd's survey disclosed that the points located by Mr. Morford were accurate and that the actual bearing between these points is north 89° 17' 12" west. The eight second difference between the Judd-Morford bearings is immaterial, as it would result in a change of only one-eighth inch in one hundred feet. On the other hand, Mr. Judd

found that the true bearing between the points located by Mr. Rutherford was north 89° 01′ 47″ west, instead of 88° 53′ 43″ west.

It would add nothing to the case authority of this jurisdiction to set forth the technical details of the surveying methods used by the various surveyors. After a review of the record, we are convinced, as was the trial court, that

" . . . the sound way to do that (locate the boundary line) is in my opinion the way Mr. Judd did, to take established Geodetic points, to find the true coordinates, and then to work from any one known true coordinate to the other fixed monuments, and run your line accordingly. That is what he did, and the Court is satisfied that the true line of this property is the Morford line as corroborated by the Judd survey."

We have considered appellants' remaining assignments of error and find that they are not well taken.

The judgment is affirmed.

GRADY, C. J., SCHWELLENBACH, HILL, and DONWORTH, JJ., concur.