[No. 35601. *En Banc.* March 2, 1961.]

EMILY S. GRILL et al., *Appellants*, v. MEYDENBAUER BAY YACHT CLUB et al., *Respondents.*[1]

[1]Reported in 359 P. (2d) 1040.

*Catlett, Hartman & Jarvis* and *Jones, Grey, Kehoe, Hooper & Olsen*, for appellants.

*Lenihan & Ivers* and *Donald D. Fleming*, for respondent Meydenbauer Bay Yacht Club.

*Skeel, McKelvy, Henke, Evenson & Uhlmann*, for respondent Northern Life Ins. Co.

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Guttormsen, Schofield, Willits & Ager*, for respondents Donnally *et al.*

*The Attorney General, E. P. Donnelly* and *H. T. Hartinger, Assistants*, for respondent State of Washington.

WEAVER, J.—Lake Washington, adjacent to the east side of Seattle, is an inland navigable body of fresh water extending approximately seventeen miles north and south. It is connected to Puget Sound by ship canal, Portage Bay, Lake Union, and government locks.

Meydenbauer Bay, on the east side of Lake Washington, extends from northwest to southeast approximately seven-tenths of a nautical mile.

The property involved in this action lies in the southeasterly six hundred feet of the bay or cove which is, of course, concave in shape.

Plaintiffs, whose tracts of land are contiguous, are the owners of the uplands and shorelands at the southeasterly end of the bay. Defendant Meydenbauer Bay Yacht Club is the owner of the uplands and shorelands on the northeasterly side of the bay next to plaintiff Grill's tract. The other defendants are the owners of the uplands and shorelands on the southwesterly side of the bay adjacent to plaintiff Sound Land Company's tract.

The conveyances of shorelands in this area to the parties or to their predecessors in interest leave undetermined the outer boundaries and the side lines of the shorelands conveyed. They were conveyed simply as being

" . . . situated in front of, adjacent to, or abutting upon that portion of the Government meander line lying in front of . . ."

the property particularly described.

The shorelands here involved are defined by statute as that land

" . . . bordering on the shores of a navigable lake or river not subject to tidal flow, between the line of ordinary high water and the line of navigability . . ." RCW 79.01.032.

The factual picture of this case is complicated by the fact that in 1916 the water level of Lake Washington was lowered as a result of its connection by canal and locks with Puget Sound. The legislature, however, provided that the outer boundary of shorelands should still

" . . . be the line of ordinary navigation as the same shall be found in such waters after such lowering, . . ." Laws of 1913, chapter 183, § 1, p. 667; RCW 79.16.380.

Since side lines of the shorelands are undefined, and the outer boundaries of the shorelands are simply described by the statute as the "line of ordinary navigation," it is apparent that it is impossible to formulate a precise legal description of the shorelands in the bay until a "line of ordinary navigation" is established.

The purpose of this action, commenced October 8, 1957, is to determine the line of ordinary navigation in the southeasterly end of Meydenbauer Bay and fix the side lines of the shorelands, thus defining the properties owned by the respective parties and their access to navigable waters.

We agree with appellants' statement found in their opening brief.

"There are just two questions to be answered in this case. The first and primary question is: Where should the line of navigability be located? The second question is: When the line of navigability is located, upon what principle shall the line of navigability and access thereto be apportioned and the side lines drawn? When that principle is determined, there is no difficulty in drawing the side lines."

Although the case was in the pre-trial state from October 8, 1957, to March 25, 1960—almost two and one half years—and the sixth supplemental transcript contains minute entries showing that at least ten pre-trial hearings were held, pursuant to Rule of Pleading, Practice and Procedure 16, the record[2] does not disclose that a pre-trial order was ever entered.

 A pre-trial order is not a final order; it is not appealable. Its sole surpose is to limit

" . . . the issues for trial to those not disposed of by admissions or agreements of counsel; and such order when entered controls the subsequent course of the action, *unless modified at the trial to prevent manifest injustice.*" (Italics ours.) Rule of Pleading, Practice and Procedure 16, RCW Vol. 0.

September 24, 1959, defendant moved for a partial summary judgment establishing the outer boundaries of the shorelands involved—the line of navigability. November 17, 1959, plaintiffs moved for summary judgment or in the alternative for a partial summary judgment. Both motions were filed after the ten pre-trial conferences to which reference has been made.

The judgment of March 25, 1960, from which this appeal is prosecuted, has two facets. First, it establishes a navigable channel extending into the southeasterly end of Meydenbauer Bay. In general, the channel passes in front of the boat moorages maintained by the Meydenbauer Bay Yacht Club. Second, it reserves for trial in the future all questions of side-line boundaries of shorelands, claims of adverse possession, payment of taxes, laches, and estoppel because they involve disputed questions of material facts.

 Plaintiffs have appealed. Counsel are agreed that the judgment was entered pursuant to Rule of Pleading, Practice and Procedure 56(d), RCW Vol. 0, which reads as follows:

---

[2]There are six volumes of transcript and eight supplemental transcripts, totaling 992 pages. They measure six and one half inches in height, and, with the briefs, pleadings, affidavits, depositions, maps, charts, and exhibits, weigh twenty-five pounds.

"(d) *Case Not Fully Adjudicated on Motion.* If on motion under this rule judgment is not rendered upon the whole case or for all the relief asked and a trial is necessary, the court at the hearing of the motion, by examining the pleadings and the evidence before it and by interrogating counsel, shall if practicable ascertain what material facts exist without substantial controversy and what material facts are actually and in good faith controverted. It shall thereupon make an order specifying the facts that appear without substantial controversy, including the extent to which the amount of damages or other relief is not in controversy, and directing such further proceedings in the action as are just. Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly."

The "judgment" of March 25, 1960, is "not rendered upon the whole case." It only decides one element necessary for the final decision of the action. It limits the issues for trial and is, in truth, nothing more than an interlocutory summary adjudication of a factor necessary for final decision of the litigation.

The effect and function of such an order is succinctly described in 6 Moore's Federal Practice (2d ed.) 2311 (1958), as follows:

"It has been pointed out that Rule 56 provides for a 'partial summary judgment', namely, a summary judgment that is not rendered upon the whole case or for all the relief asked; but that the term 'partial summary judgment' is usually a misnomer, and that a more accurate term would be an interlocutory summary adjudication. The first edition of the Treatise stated:

" 'Since Rule 54(a) defines "judgment" as used in the Federal Rules as including a decree and "any order from which an appeal lies," *it might be contended that a partial summary judgment rendered under Rule 56 is, by virtue of the definition in Rule 54(a), an appealable judgment. But this contention fails for two reasons*:

" '1. Rule 56(d) expressly provides the procedure for dealing with a partial summary judgment. *It is clear from Rule 56(d) that a partial summary judgment is not a final judgment* [nor appealable unless this particular interlocutory order is made appealable by statute,] *but is merely a pre-trial adjudication that certain issues in the case shall*

*be deemed established for the trial of the case.* Such an adjudication is on a par with the preliminary order formulating issues under Rule 16.

" '2. As pointed out in the discussion of Rule 54(b) [Washington Rule of Pleading, Practice and Procedure 42(b)], it was the policy of the draftsmen of the Federal Rules to continue the policy under the former practice of not allowing interlocutory appeals, except where specifically provided for by a statute of the United States.'

"This position is fully sustained by the courts and by the Advisory Committee. *Rule 56 is not intended to affect appellate jurisdiction. It does not make any interlocutory order appealable.*" (Italics ours.)

■ Recently, this court said:

"Appeals may not be brought piecemeal unless clearly authorized by law. *Owens v. Kuro,* 56 Wn. (2d) 564, 354 P. (2d) 696 (1960), and cases cited; see *Maybury v. Seattle,* 53 Wn. (2d) 716, 336 P. (2d) 878 (1959). The reasons for the rule are obvious. To permit fragmentary appeals would delay the administration of justice, to the detriment of litigants, and would throw an unnecessary burden on appellate courts." *Crosthwaite v. Crosthwaite,* 56 Wn. (2d) 838, 358 P. (2d) 978 (1961).

■ The order of March 25, 1960, is not a judgment within the purview of Rule of Pleading, Practice and Procedure 42(b), effective January 1, 1960 (Federal Rule 54(b)), permitting entry of a *final* appealable judgment upon one or more, but less than all, of plaintiffs' claims under certain conditions set forth in the rule.[3]

■ Under no circumstances do we reach plaintiffs' second question—upon what principle shall access to the line of navigability be apportioned and the side lines drawn? This question has not yet been resolved by the trial court. We do not give advisory opinions.

We conclude that the judgment of March 25, 1960, is not a final judgment that is appealable under Rule on Appeal 14, RCW Vol. 0.

This does not preclude ultimate appellate review of the order in question after entry of a final judgment determin-

---

[3]See annotation: "Propriety of summary judgment on part of single or multiple claims," E. H. Schopler, 75 A. L. R. (2d) 1201 (1961).

ing the rights of the parties. An appeal from the *final* judgment may bring up for review any order made in the action either before or after final judgment. Rules on Appeal 14(1), 17, RCW Vol. 0.

■ To this point, we have only discussed the order of March 25, 1960. April 6, 1960, the court entered an order dismissing the State of Washington as a party to the action. Although plaintiffs (appellants) filed a notice of appeal therefrom and assigned error thereto, their brief does not mention the order in the statement of the case, the resume of the pleadings, nor is there any argument in support of this assignment of error. This court cannot consider an assignment of error that is not argued in appellants' brief. *Johnson Service Co. v. Roush, ante* p. —, —, 355 P. (2d) 815 (1960); *Obde v. Schlemeyer,* 56 Wn. (2d) 449, 453, 353 P. (2d) 672 (1960); *Bates v. Bowles White & Co.,* 56 Wn. (2d) 374, 377, 353 P. (2d) 663 (1960).

Costs will abide the final determination of the action.

This appeal should be dismissed. It is so ordered.

ALL CONCUR.

■

April 10, 1961. Petition for rehearing denied.