[No. 35788.   Department One.   May 17, 1962.]

H. P. CLAUSING *et al., Respondents,* v. W. W. KASSNER *et al., Appellants.*\*

*\*Reported in 371 P. (2d) 633.

*Reaugh, Hart & Allison* and *Dudley Panchot,* for appellants.

*Cook, Flanagan & Berst,* for respondents.

WEAVER, J.—Plaintiff commenced this action to quiet title to certain property and to restrain defendant from trespassing, flooding, and damaging his property.

The disputed property is a triangular tract. The southern leg extends westward 374.94 feet from the apex. The western leg, bordering on Puget Sound, is 12.7 feet.

The principal question is whether the triangular strip belongs to Tract 14 on the north, owned by defendant, or to Tract 15 on the south, owned by plaintiff. Tracts 14 and 15 are designated on a subdivision plat, unrecorded at the time the tracts were conveyed by the common grantor. Defendant claims the southern leg of the triangle as the southern boundary of Tract 14 because the metes and bounds description in the 1957 conveyance to him describes the southern leg of the triangle. Plaintiff claims the northern leg of the triangle as the northern line of Tract 15 on two theories: (1) the line was established by survey, marked by stakes by the common grantor, and subsequent conveyances were made with reference thereto and with knowledge thereof; and (b) plaintiff and his predecessors in interest had acquired ownership to the northern line by adverse possession.

The following is the chain of title of the disputed property:

A. In 1939, all of the land in question, together with adjacent property to the north and south, was owned by Hilton W. Talbot.[1] He had A. L. Bjorkstam, a civil engineer now deceased, survey the property and prepare a plat of "Subdivision of Lot C, Block 5, Normandy Park, King County."

B. *Tract 15* (now owned by plaintiff-respondent)

1941—Talbot deeded Tract 15 to George C. Flack (a correction deed was subsequently made)

1948—Flack deeded Tract 15 to Harold M. Parks

1957—Parks deeded Tract 15 to plaintiff

C. *Tract 14* (now owned by defendant-appellant)

1943—Talbot deeded Tract 14 to Ben Tipp

1957—Tipp deeded Tract 14 to defendant.

All of the conveyances referred to above, except the 1941 deed from Talbot to Flack, identify the respective tracts by number, as well as by metes and bounds description prepared by a title insurance company because the plat of Subdivision of Lot C, prepared by A. L. Bjorkstam in 1939, was unrecorded. Defendant's claim to the disputed property is based upon the metes and bounds description.

May 8, 1959, defendant invaded the disputed property with a crew of men operating a clam-shell crane, a pneumatic hammer, and a bulldozer. They excavated soil, lawn, logs, plantings, sprinklers, and shrubs from the disputed property.

The same day, plaintiff commenced this action and had a restraining order issued. In defiance of the restraining order, defendant had a 235-foot cyclone fence erected on the boundary indicated in his deed.

After several procedural ploys, both parties moved for summary judgment. Plaintiff's motion for summary judgment was based, among other things, upon the contention that the division line between Tract 14 and Tract 15 had been established by the common grantor, Hilton W. Talbot. The defendant does not dispute the rule of law that

---

[1] For the purpose of financing, title was taken in the name of Archibald Talbot, who held it for his brother, Hilton W. Talbot.

the location of a boundary line by a common grantor is binding upon the grantees and their successors in interest, who take with reference thereto; nor that the line established upon the ground by the parties is presumably the line mentioned in the deed. *Martin v. Hobbs,* 44 Wn. (2d) 787, 790, 270 P. (2d) 1067 (1954); *Angell v. Hadley,* 33 Wn. (2d) 837, 207 P. (2d) 191 (1949); *Atwell v. Olson,* 30 Wn. (2d) 179, 190 P. (2d) 783 (1948); *Strom v. Arcorace,* 27 Wn. (2d) 478, 178 P. (2d) 959 (1947); *Windsor v. Bourcier,* 21 Wn. (2d) 313, 150 P. (2d) 717 (1944); *Roe v. Walsh,* 76 Wash. 148, 135 Pac. 1031, 136 Pac. 1146 (1913); *Turner v. Creech,* 58 Wash. 439, 108 Pac. 1084 (1910).

Plaintiff supported his motion for summary judgment by numerous affidavits including those of Mr. Talbot and Mr. Flack, former owners of Tract 15; Mr. Tipp, a former owner of Tract 14; and the pre-trial deposition of Harold M. Parks, who owned Tract 15 from 1948 to 1957.

The statements of these affiants may be summarized as follows: They *purchased* and *sold* the respective properties by reference to the Bjorkstam survey and the stakes the surveyor placed in the ground for the common grantor. These stakes indicated the division line between Tracts 14 and 15 to be the northern boundary of the disputed triangle.

While Mr. Parks owned Tract 15, he made the following improvements:

(a) Placed logs, approximately the size of telephone poles, from one to three or more poles high, to retain the fill and top soil along the boundary line determined by the Bjorkstam survey and the stakes placed by the common grantor, thus raising the level of the tract approximately four feet.

(b) Built a 104.15-foot sea wall along the west side of Tract 15—its north end terminated at the west end of the line as staked by the common grantor. The sea wall extended the 104-foot western frontage of Tract 15, as indicated on the Bjorkstam survey.

(c) Planted lawn, flowers, shrubs, and trees; built a trellis; and installed sprinklers in the area to the south edge of the logs on the north.

(d) Had Tract 15 surveyed, in 1949, according to the metes and bounds description in his deed, and then learned that the west end of the line, described in the deed, was 12.7 feet south of the line to which he had previously improved the property. (In 1958, defendant had the property surveyed. The survey agreed substantially with the 1949 Parks survey.)

Defendant supported his motion for summary judgment and opposed plaintiff's motion by the depositions of plaintiff and Mrs. Clausing and the affidavit of Horton Dennis.

Mrs. Clausing's deposition is of no aid on the question of the property's being conveyed with reference to a line fixed on the ground by the common grantor; she testified she did not talk to Mr. and Mrs. Parks about the location of the north boundary of Tract 15. She did testify, however, that there were rose bushes planted to the north line and a rose trellis and cement compost box installed along the north line as developed by the Parks.

In his pre-trial deposition, plaintiff Clausing testified Mr. Parks represented that he was selling "all cultivated areas" of the property that he pointed out.

Although defendant finds solace in the affidavit of Horton Dennis, a civil engineer, we do not find that it meets the issue raised by the motion for summary judgment—were the tracts conveyed by a common grantor with reference to a division line staked on the ground?

After argument on the motions, the superior court concluded that ". . . the pleadings, depositions, and admissions on file, together with the affidavits, . . . show that there is no genuine issue . . ."[2] concerning the fact that Mr. Talbot, the common grantor, ". . . sold Lots 14 and 15 with reference to the line actually established on the ground"; and that each of the subsequent grantees (defendant excepted) ". . . took with knowledge of this line . . . established by Talbot . . . purchasing property based on it."

---

[2] Rule of Pleading, Practice and Procedure 56(c), RCW Vol. 0.

Consequently, March 3, 1960, the superior court entered a "partial summary judgment," as outlined above, and stated:

"The court specifically has not determined that the plaintiffs' use of the disputed strip and the physical appearance of the same were such that the defendant having viewed the property Lot 14 prior to purchase may be said to have taken with notice of the line. This is a question of fact to be determined."

After trial of the issues thus framed, the trial court entered judgment as follows:

(a) Title to the disputed area was quieted in plaintiff, and defendant was enjoined from interfering with possession.

(b) Money damages were awarded plaintiff against defendant as a result of the invasion of May 8, 1959.

(c) Plaintiff was awarded attorney's fees

". . . for his costs and expenses in procuring proof and establishing defendant's violation of the restraining order issued May 8, 1959, and in establishing the truth of matters specifically and categorically denied by W. W. Kassner [defendant]."

(d) Defendant was fined for contempt of court, having violated the restraining order of May 8, 1959.

Defendant's assignments of error fall into three categories: *first,* those directed to entry of the "partial summary judgment"; *second,* those directed to findings of fact entered after trial, including damages suffered by plaintiff; and *third,* an assignment of error directed to the allowance of attorney's fees to plaintiff.

■ *First*: The "partial summary judgment" entered March 3, 1960, pursuant to Rule of Pleading, Practice and Procedure 56(d), RCW Vol. 0, was, in truth, a nonappealable, interlocutory, summary adjudication of ". . . what material facts exist without substantial controversy . . ." under the rule, and

". . . Upon the trial of the action, the facts so specified shall be deemed established, and the trial shall be conducted accordingly." Rule of Pleading, Practice and Procedure 56(d), RCW Vol. 0;

*Grill v. Meydenbauer Bay Yacht Club,* 57 Wn. (2d) 800, 359 P. (2d) 1040 (1961); *Crosthwaite v. Crosthwaite,* 56 Wn. (2d) 838, 358 P. (2d) 978 (1960); *Owens v. Kuro,* 56 Wn. (2d) 564, 354 P. (2d) 696 (1960); *Kerlik v. Jerke,* 56 Wn. (2d) 575, 354 P. (2d) 702 (1960); *Maybury v. Seattle,* 53 Wn. (2d) 716, 336 P. (2d) 878 (1959). See Orland, 4 Wash. Prac. 353, 1961 Supp. 38, 40, 41; 6 Moore's Fed. Prac. (2d ed.) 2311 (1958).

The summary adjudication is, of course, reviewable on appeal from the final judgment. Rules on Appeal 14(1), 17, RCW Vol. 0; *Grill v. Meydenbauer Bay Yacht Club, supra.* When it is reviewed, this court must consider only those matters that have been presented to the superior court for its consideration before entry of the interlocutory summary adjudication. *American Universal Ins. Co. v. Ranson,* 59 Wn. (2d) 811, 370 P. (2d) 867 (1962).

In this opinion, we have heretofore set forth, with some particularity, the matters before the superior court when it considered the motions for summary judgment. Defendant relied, principally, on the affidavit of Horton Dennis, an engineer. His affidavit does not controvert the facts established by plaintiff's affidavits and depositions that Mr. Talbot had the division line staked; nor that the tracts were sold and purchased by subsequent grantees with reference to the line as so determined.

We conclude, as did the superior court, that plaintiff met the burden of showing there was no *genuine* dispute of these material facts. See *Rossiter v. Moore,* 59 Wn. (2d) 722, 370 P. (2d) 250 (1962); *Preston v. Duncan,* 55 Wn. (2d) 678, 349 P. (2d) 605 (1960). It was not error to enter the interlocutory summary adjudication.

Further, the trial court did not err when it denied defendant's motion, made during trial, to reconsider and set aside the summary adjudication of March 3, 1960. As we view the statement of facts, defendant offered nothing at the trial that was not before the superior court for its consideration when it ruled upon the motion for summary judgment; hence, it was not error for the trial court to

carry forward the facts determined by the interlocutory summary adjudication into the ultimate findings of fact.

*Second*: The second category of defendant's assignments of error is directed to certain findings of fact. There is substantial, credible evidence in the record to support these findings, and we cannot disturb them. *Guyton v. Temple Motors, Inc.*, 58 Wn. (2d) 828, 365 P. (2d) 14 (1961); *Thorndike v. Hesperian Orchards, Inc.*, 54 Wn. (2d) 570, 343 P. (2d) 183 (1959). In addition, we note defendant does not assign error to finding of fact No. 8, in which the court found that defendant had seen Tract 14 many times prior to his purchase, and seen sufficient improvements to put him on notice of the boundary between the tracts.

*Third*: Defendant assigns error to the court's finding that plaintiff is entitled to certain attorney's fees

" . . . for his costs and expenses in procuring proof and establishing defendant's violation of the restraining order issued May 8, 1959, and in establishing the truth of matters specifically and categorically denied by W. W. Kassner . . . " (Finding No. 16)

The allowance of fees is based upon RCW 7.20.100 (Contempts-Indemnity to Injured Party) and Rule of Pleading, Practice and Procedure 37 (c), RCW Vol. 0, which provides:

"(c) *Expenses on Refusal to Admit*. If a party, after being served with a request under Rule 36 to admit the genuineness of any documents or the truth of any matters of fact, serves a sworn denial thereof and if the party requesting the admissions thereafter proves the genuineness of any such document or the truth of any such matter of fact, he may apply to the court for an order requiring the other party to pay him the reasonable expenses incurred in making such proof, including reasonable attorney's fees. Unless the court finds that there were good reasons for the denial or that the admissions sought were of no substantial importance, the order shall be made."

Defendant does not deny violation of the restraining order issued May 8, 1959. Prior to motion for summary judgment, plaintiff served a demand for admissions, pursuant to Rule of Pleading, Practice and Procedure 36, RCW Vol. 0. A number of the requested admissions were categorically

denied by defendant, requiring plaintiff, upon trial, to prove facts subsequently admitted by defendant or established by plaintiff without controverting testimony.

Inherent in the trial court's finding is a determination that defendant had not answered the request for admissions with complete candor, nor did there exist "good reasons for the denial."

The court, by the allowance, did not purport to fix a fee for the entire trial of the case, but only for that portion of the trial made necessary by defendant's violation of the restraining order and his abuse of the rule. The record of the work made necessary by defendant's violation of the order and by his denials was before the trial court.

In this posture, it was not error for the trial court to allow attorney's fees under the statute and rule. See *State ex rel. Seattle Bottlers Ass'n v. Flora Co., Inc.*, 169 Wash. 120, 13 P. (2d) 467 (1932), and *Mitchell v. Watson*, 58 Wn. (2d) 206, 361 P. (2d) 744 (1961).

The judgment is affirmed.

ROSELLINI, OTT, FOSTER, and HUNTER, JJ., concur.