[No. 35848. Department Two. August 15, 1962.]

LEWIS COUNTY SAVINGS AND LOAN ASSOCIATION, *Respondent*, v. PATRICK J. BLACK *et al., Appellants.**

*Everal Carson,* for appellants.

*William Church,* for respondent.

*Reported in 374 P. (2d) 157.

DONWORTH, J.—This is an appeal by the defendant mortgagors (appellants) from a summary judgment of foreclosure, and from an order dismissing their counterclaim without prejudice.

The facts and the procedural aspects of this case are complex, and our consideration of this appeal has been further hindered by the skimpiness of the record (and the failure of counsel on either side to furnish this court with authority for their contentions).

March 10, 1955, appellants executed and delivered a promissory note in favor of respondent for the sum of $5,000.

The terms of the note, in part, are:

"All delinquent payments shall bear interest at the rate of 10 per cent per annum during the period of delinquency.

" . . .

"If default be made in the payment of any installment of principal or interest or any installment as herein provided for the payment of taxes, insurance and assessments, when the same shall become due, then the whole of this note, both principal and interest accrued, shall forthwith become payable without demand and the whole thereof shall be subject to the increased rate of interest thereon provided for in the case of delinquent payments.

"In the event this note or any part thereof is placed in the hands of attorneys for collection I agree to pay in addition to the amount due thereon 5% of such amount as attorney's fees, and in the event of suit or action being instituted to collect this note or any portion thereof, I agree to pay in addition to costs, and disbursements provided by statute, a reasonable sum in like lawful money as attorney's fees in said suit or action.

"I expressly consent to a personal deficiency judgment for any part of the debt hereby evidenced that may not be paid out of the property mortgaged or pledged to secure the same."

At the same time, and as part of the same transaction, appellants executed a mortgage to secure the note. By the terms of the mortgage, appellants covenanted, *inter alia*:

" . . . that they will . . . pay before delinquent all taxes . . . keep the buildings thereon in a good condition and state of repair and continuously insured against loss of or damage to the said buildings by fire. . . ."

The mortgage further provided:

"Should the mortgagors fail to keep any of the foregoing covenants, then the mortgagee may perform them, without waiving any right or remedy herein given for any such breach or default of the mortgagors, and all expenditures in that behalf shall be secured by this mortgage and shall bear interest at the rate of ten per cent per annum, and be repayable by the mortgagors on demand; . . .

"Wherever alterations or improvements are commenced on the property covered by this mortgage, or wherever the sum or any part of the sum secured hereby is advanced for the purpose of construction, alteration or improvement of any building, the mortgagors covenant and agree that the construction, alteration or improvement will be completed within a period of six months from the date hereof, and if not so completed the mortgagee, at its option, may complete such construction, alteration or improvement and any sum expended or advanced for that purpose, with interest thereon at the rate of 10% per annum, shall be repaid on demand and shall be secured hereby, and the mortgagee may declare the whole sum secured by this mortgage due and payable forthwith and without demand and may foreclose this mortgage.

"The mortgagors consent to a *personal deficiency judgment* for any part of the debt hereby secured which shall not be paid by the sale of said property upon foreclosure hereof."

At some later date, while appellants were apparently out of the state, respondent had construction of the house completed, and added $1,647.25 to the mortgage debt.

The next occurrence revealed to us by the record was the sending of the following letter by appellants' counsel to respondent:

"Lewis County Savings and Loan Association
Chehalis, Washington                    January 7, 1959
"Gentlemen:

"Your letters to Mr. Patrick J. Black have been referred to me for attention.

"Mr. Black has thoroughly checked your statement of cost of partially completing his house which was under mortgage. For your information is a list of the items that Mr. Black has found did not go into the house, and that he found did go into it. This list is self explanatory.

"In view of the fact that much of the material was permitted to be stolen by the contractor of someone else, Mr. Black can not agree to the supervision fee—especially since the job was poorly done, the floor was laid with flat headed nails, and the sanding was done in such a manner as to ruin the floor beyond repair.

"There seem to be two charges for laying the floor. The plywood used in the cupboards was nothing but rejects that could be bought for three cents a pound.

"The insurance money on the fire has not been accounted for. The rent for June of 1959 has not be [sic] accounted for.

"Everything done under your supervision has to be redone, and the best estimate from a painter as to walls and ceilings is approximately $1000.00.

"The over all picture is that it will now cost more to put the place in presentable condition than if the work you had done had never been attempted.

"I have advised Mr. Black not to make any payments until we know all that is wrong with the house and get a settlement on it as payments now may be considered a waiver of his rights.

"I have personally examined the premises and find the workmanship and material to be very inferior.

"It is therefore suggested that an adjustment of some kind is in order."

One month later, counsel for appellants sent another letter:

"Lewis County Savings & Loan Ass'n.
Post Office Box 329                    February 8, 1960
Chehalis, Washington
*Attention of Arthur S. Cory, President*
Gentlemen:                              Re: Pat Black
"I have had no response to my last letter to you, and it is not the intention of Mr. Black and me to become involved in litigation with the Lewis County Savings & Loan. We took the trouble at considerable time and effort to itemize and explain in my last letter what in our opinion are matters to be considered in an agreement of some kind.

"Mr. Black is not paying the payments at this time because he does not want to waive any rights he has. If we can settle out this matter, and he can be in a position to assume regular payments after a proper agreement, he is ready, willing, and able to do so.

"It will be appreciated if we can hear from you on this matter."

On March 11, 1960, respondent filed a summons and complaint seeking a foreclosure of the mortgage. Subsequently, on April 25, respondent served on appellants' counsel, a request for admissions that no payment on the note or mortgage had been made since September 15, 1959, and that no taxes or insurance premiums had been paid for two years. Appellants did not respond to this request, and the facts therein are deemed admitted.

Appellants' answer was filed April 28, 1960. In the answer, the execution and delivery of the note and mortgage were admitted, certain other allegations of the complaint were denied, and it was alleged that the principal of the note had been reduced, by payments, to $4,164.14. It was further alleged "by way of affirmative defense and cross-complaint," that, pursuant to the provision in the mortgage permitting respondent to expend sums deemed necessary by it for the maintenance, operation, and repair of the mortgaged property, respondent, without consulting appellants, "took possession of said mortgaged property . . . and proceeded to complete the construction on the house located thereon, and added or attempted to add to said mortgage the sum of $1,647.25, of which amount . . . $1,525.00 was for completing the house." As a result of the unsatisfactory manner in which the work was done, respondents alleged, "the house was completely ruined."

Appellants also claimed that respondent had refused to account for an insurance payment of at least $300, which had been collected because of a fire loss, and $25 rent which respondent had received.

The final allegations were that the damage caused by respondent exceeded the value of the house, and that the mortgage should be cancelled.

The "affirmative defense and cross-complaint" concluded with a prayer that respondent's "action be dismissed and that they take nothing by reason thereof."

(No reply was filed to appellant's counterclaim. However, since it was denominated a "cross-complaint," it could be argued that respondent was not required to file a reply under the terms of Rule of Pleading, Practice and Pro-

cedure 7, RCW Vol. 0, which provides, in part, ". . . there shall be a reply to a counterclaim denominated as such. . . .")

On June 7, 1960, respondent filed a motion for summary judgment, based on the facts as heretofore set forth plus an affidavit of respondent's secretary showing delinquency in payments on the note and mortgage, and "Defendants' failure to plead a legal defense or cross claim."

The affidavit of appellant husband, in opposition to the motion for summary judgment, stated:

". . . As shown by my cross-complaint I have substantial offsets against the mortgage of the plaintiff.

"I state upon my oath that plaintiff has damaged my house to the full extent of the mortgage thereon, and possibly more, that this constitutes an offset against any claim of the plaintiff, and that by reason thereof I owe plaintiff nothing.

"I have furnished plaintiff with detailed information on this matter, but plaintiff has chosen to ignore the same.

"This house of mine, as it now is, as a result of the work plaintiff attempted to do is ruined to all practical purposes as a home or place of beauty, and because of the unworkmanlike way plaintiff applied his or its efforts, said house is worth $7000.00 less than if said work had been properly done. . . ."

The motion came on for hearing on June 27, 1960. On June 30, the trial court entered its findings of fact, conclusions of law, summary judgment, and decree of foreclosure. Judgment against appellants was entered in the sum of $6,143.53 principal and interest, $750.00 attorney fees, plus costs. The foreclosure decree provided for a deficiency judgment, and further provided "that the period of redemption shall run from the date of this order." No mention was made, even in the findings of fact and conclusions of law, of the affirmative defense and counterclaim.

Simultaneously with the entry of the summary judgment, the court made an order directing that appellants file within fifteen days ". . . a more definite statement as to the nature and amount of their claim setting forth with

particularity the exact sum, if any, claimed as loss or damages."

A more definite statement was filed July 8, 1960.

By August 5, 1960, counsel for appellants had served and filed a demand for jury trial, which stated:

"Since the equitable phase of the case has been removed by decree of foreclosure heretofore entered herein and the only issue remaining is a law action for damages by the defendants, the defendants deposit herewith a jury fee and demand that the above entitled action be forthwith set before a jury."

On September 30, 1960, the court entered a "pretrial order" reading, in part, as follows:

". . . and a pre-trial conference being held and the Court having examined the pleadings of the respective parties and other matters and plaintiff having moved for dismissal of defendant's Answer and Cross-Complaint, said dismissal to be without prejudice, and the Court being otherwise advised in the premises and having orally stated that plaintiff's motion should be granted,

"Now, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED that defendants Answer and Cross-Complaint be and the same hereby is dismissed without prejudice upon the condition that if defendants should commence an action against plaintiff that the venue of said action may be laid in Clark County, Washington."

It should be noted that a pretrial order is not appealable. *Owens v. Kuro,* 56 Wn. (2d) 564, 354 P. (2d) 696 (1960); *Maybury v. Seattle,* 53 Wn. (2d) 716, 336 P. (2d) 878 (1959). However, the above order dismisses appellants' counterclaim, albeit without prejudice. Rule on Appeal 14, RCW Vol. 0, provides for an appeal by an aggrieved party from ". . . any order affecting a substantial right in a civil action or proceeding, which either, (1) in effect determines the action or proceeding and prevents a final judgment therein; or (2) discontinues the action. . . ." When, as here, the order is a final order which actually terminates the action, it may be treated as a final judgment. *Arnold v. National Union of Marine Cooks & Stew-*

*ards Ass'n,* 41 Wn. (2d) 22, 246 P. (2d) 1107 (1952). Rule 14, *supra,* also provides that an appeal from a final judgment ". . . shall also bring up for review any order made in the same action or proceeding either before or after the judgment. . . ." The order in this case, therefore, is, and must be treated as, an appealable final judgment.

October 19, 1960, defendants served and filed the following notice of appeal:

"Notice is hereby given that the defendants in the above entitled action appeal from each and every order entered against them in the above entitled proceedings and especially from the summary judgment of foreclosure of mortgage and pre-trial order dismissing the above entitled action."

Appellants, in their brief in this court, have assigned three claimed errors of the trial court as follows:

"I. In granting respondent's summary judgment.
"II. In making the following 'Findings of Fact and Conclusions of Law:' [Here are set forth certain findings and conclusions relating to the mortgage foreclosure.]
"III. In dismissing the appellant's Answer and cross-complaint."

The two fundamental issues are whether it was error to dismiss appellants' counterclaim without prejudice, and whether it was error to enter the summary judgment and decree of foreclosure. The former question will be discussed first.

█ In an appeal from a dismissal without prejudice, the merits of appellants' claim are not in issue, and cannot be reviewed. The only relevant issue is whether the trial court was legally justified in entering the judgment without reaching the merits. *Covington v. Chesapeake & Ohio R. Co.,* 112 S. W. 862 (Ky. 1908).

Appellants, in their brief, have restricted their arguments to the merits of their counterclaim (which we cannot consider), and have failed to furnish this court with any argument or authority as to why the trial court might have committed error in dismissing the counterclaim with-

out prejudice. Nevertheless, we shall consider the contention.

■ Unless there is some statutory basis for doing so, the trial court has no discretion to enter an involuntary order of dismissal without prejudice. In view of the nature of their counterclaim, appellants have the right to have their case heard, unless they waived their right, abandoned their claim or failed to prosecute it diligently, or disobeyed an order of the court. Rules of Pleading, Practice and Procedure 41.08W and 40.04W, RCW Vol. 0, and RCW 4.56.120. The court did not state its reasons for dismissing appellants' counterclaim without prejudice, and the record contains no fact which would support such a judgment. We, therefore, hold that the trial court erred in dismissing appellants' counterclaim without prejudice.

Since this case must be remanded to allow appellants a trial on their counterclaim, we find it necessary to discuss appellants' other contention for the guidance of the trial court.

We turn now to the summary judgment and order of foreclosure.

The summary judgment of June 30, 1960, did not dispose of all of the issues in the case. Thus, at best, it was an interlocutory summary adjudication of established facts under Rule of Pleading, Practice and Procedure 56(d), RCW Vol. 0, and was not appealable at the time it was entered, *Crosthwaite v. Crosthwaite,* 56 Wn. (2d) 838, 358 P. (2d) 978 (1960), but under Rules on Appeal 14 and 17, RCW Vol. 0, it can be reviewed upon an appeal from a final judgment. *Grill v. Meydenbauer Bay Yacht Club,* 57 Wn. (2d) 800, 359 P. (2d) 1040 (1961).

■ However, the judgment went beyond establishing facts. It determined that respondent was entitled to a decree of foreclosure before appellants' affirmative defense and counterclaim was heard on its merits.

Furthermore, a decree of foreclosure was entered, which substantially prejudiced appellants' remedy on their counterclaim. Not only would the loss of their house create

irreparable and unnecessary damage to appellants, but, if they are able to establish the truth of the allegations of their counterclaim, the very damage caused by respondent would, by reducing the value of the mortgaged property, increase the likelihood of a deficiency judgment being entered against appellants.

It is not improper to "split up" a case, and have separate trials upon separate issues. Rule of Pleading, Practice and Procedure 42(a), RCW Vol. 0, allows a separate trial on any issue, for the sake of convenience. Nevertheless, it is improper to enter a summary judgment granting to one party the remedy about which both parties are litigating, as long as relevant issues of fact have not been decided. In this case, the entry of a decree of foreclosure, on motion for summary judgment, was improper unless (1) there were no disputed issues of fact, or (2) the disputed facts were irrelevant to the question of whether or not the mortgage should be foreclosed.

The record does not show what the reason was for summarily entering a foreclosure decree despite appellants' affirmative defense and counterclaim. In fact, neither the findings of fact, conclusions of law, nor summary judgment and decree of foreclosure made any mention of any of appellants' contentions. If it were found that the affidavit in opposition to the motion for summary judgment was improper—as, for example, if it were found that the affidavit did not set forth facts which would have been admissible upon a trial—then the record does not indicate why the entire case did not end at that point. On the other hand, if the decree were based on a finding that appellants' claim was not available as an offset to the note and mortgage, so that the only available remedy was a money judgment, the record should have so stated.

The entry of the decree of foreclosure should have been postponed until all the factual issues had been determined, or the reason for the entry of the summary judgment and decree of foreclosure at that time should have been given, in order to afford an adequate review on appeal.

Finally, the summary judgment and decree of foreclosure of June 30, 1960, provides that the period of redemption is to run "from the date of this order." That is error. RCW 6.24.140 provides that the right of redemption may be exercised at any time within one year *after the sale*.

The judgment of the trial court is reversed and remanded for a new trial on all issues to be conducted in accordance with the views herein expressed.

FINLEY, C. J., OTT, and HUNTER, JJ., concur.